## TRI–STATE RUBBISH, INC.

### v.

## TOWN OF GRAY and Regional Waste Systems, Inc.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1993.

Decided Oct. 15, 1993.

Ralph A. Dyer (orally), Portland, for plaintiffs.

James N. Katsiaficas (orally), Jensen Baird Gardner & Henry, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Tri–State Rubbish, Inc. ("Tri–State"), and Recyclables Unlimited Services, Inc. ("RUSI"), appeal from the adverse summary judgments entered in the Superior Court (Cumberland County, *Lipez, J.*) on their claims for declaratory judgment and injunctive relief. The trial court rejected contentions by Tri–State and RUSI that the Town of Gray's Solid Waste, Flow Control and Recycling Ordinance violates the Commerce

Clause of the U.S. Constitution[1], denies Tri–State and RUSI equal protection of the laws, and violates state and federal antitrust laws. Although the equal protection and antitrust challenges are without merit, genuine issues of material fact remain whether the Ordinance violates the Commerce Clause. We therefore vacate the judgments of the Superior Court.

Effective April 3, 1992, the Town of Gray ("Gray") adopted a Solid Waste, Flow Control and Recycling Ordinance ("Ordinance") which requires that all solid waste generated in the Town of Gray be disposed of at the Portland facility of Regional Waste Systems, Inc. ("RWS"). The avowed purpose of the Ordinance was to regulate solid waste collection and disposal, encourage recycling, and provide property owners with disposal facilities at a reasonable cost. The Ordinance was authorized by state law, 38 M.R.S.A. § 1304–B(2) (1989 & Supp.1993),[2] and complied with the Waste Handling Agreement between Gray and RWS.

RWS operates a waste-to-energy plant located in Portland. Twenty-one member municipalities, including Gray, pledged their full faith and credit to repay the bonds that financed construction of the plant should RWS default on its obligation to repay. In an effort to insure that RWS remains financially viable, all member municipalities passed ordinances similar to Gray's, guaranteeing that all "acceptable waste"[3] generated within each municipality would be funneled to RWS for incineration.

Tri–State, a Maine corporation, has engaged in the business of commercial and residential trash collection in the Town of Gray for almost twenty years. In the past, Tri–State has generally disposed of the waste it collects at either the facilities of Maine Energy Resources Corporation ("MERC") in Biddeford, or Mid–Maine Waste Action Corporation ("MMWAC") in Auburn. MERC and MMWAC would incinerate the waste to generate energy, that would then be sold in interstate commerce. RUSI, a Maine corporation, recycles glass, paper, and corrugated board and sells the materials in interstate commerce.

Disposal facilities generally charge a "tipping fee" for accepting waste. The Gray Ordinance, however, allows a private waste generator to deposit its trash at the Gray transfer station without payment of a tipping fee. Commercial waste haulers, on the other hand, must transport their waste to RWS for incineration. If a waste generator segregates its waste into recyclable/non-recyclable components, and then hires a commercial hauler to remove the waste, the hauler must take the recyclable components to the Gray transfer station and the non-recyclable components to RWS.

Tri–State objects to the Ordinance because of the increased tipping fees that the law imposes on commercial haulers.[4] RUSI objects to the Ordinance because it cuts off the flow of recyclable waste that RUSI processes in its business.

1. "The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. Art. I, § 8, cl. 3.

2. **Flow Control.** Subject to the provisions of Chapter 24 [MAINE WASTE MANAGEMENT AGENCY 38 M.R.S.A. § 2101 (Supp.1993)] municipalities are expressly authorized to enact ordinances that control solid waste collection, its transportation or its delivery to a specific facility, when the purpose and effect of such an ordinance is to gain management control over said waste and enable the reclamation of resources, including energy, from these wastes. This authorization includes, but is not limited to, ordinances:

   A. Requiring segregation of wastes;
   B. Requiring delivery of wastes generated within the municipality, or any portion of those wastes, to a designated disposal or reclamation facility;
   C. Designating certain materials as recyclable and exempt from the provisions of paragraph B; and
   D. Designating yard wastes as compost material and requiring delivery of these wastes to a designated composting facility.

3. According to the Ordinance, acceptable waste includes "[o]rdinary household, municipal, institutional, commercial and industrial solid waste," and excludes hazardous waste.

4. RWS charged (as of July 1, 1992) forty-three dollars per ton for municipal solid waste and sixty-one dollars per ton for commercial solid waste. The tipping fees at MERC for the same time period ranged from twenty-six to thirty-five dollars per ton.

■ Tri–State and RUSI contend that the Ordinance violates their right to equal protection of the laws, because it discriminates against commercial enterprises. This contention is meritless. *City of Auburn v. Tri–State Rubbish, Inc.,* 630 A.2d 227, 232 (Me. 1993). Similarly, Tri–State and RUSI's claim that the arrangement violates antitrust laws is unsupportable. We recently ruled that state action immunity to federal antitrust laws applies to this type of arrangement. *Id.* at 231. *See also Tri–State Rubbish, Inc. v. Waste Management Inc.,* 803 F.Supp. 451 (D.Me.1992), *aff'd in pertinent part,* 998 F.2d 1073 (1st Cir.1993). The flow control ordinance enabling act 38 M.R.S.A. § 1304–B(2), authorizes Gray's arrangement with RWS and therefore precludes any violation of state antitrust laws. *See Beaulieu v. City of Lewiston,* 440 A.2d 334, 345 (Me.1982) (specific legislation controls general).

■ The Commerce Clause violation asserted by Tri–State and RUSI, however, presents genuine issues of material fact. Although the waste at issue is generated in-state and largely disposed of in-state, it is an object of interstate commerce. *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* —— U.S. ——, ——, 112 S.Ct. 2019, 2023, 119 L.Ed.2d 139 (1992). The aggregate effect of ordinances similar to Gray's could have a substantial impact on interstate commerce. *See Garcia v. San Antonio Metropolitan Transit Auth.,* 469 U.S. 528, 537, 105 S.Ct. 1005, 1010, 83 L.Ed.2d 1016 (1985); *Hodel v. Virginia Surface Mining and Reclamation Ass'n. Inc.,* 452 U.S. 264, 277, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981).

In the *City of Auburn* case, the question whether a plaintiff that did not seek to place trash in the interstate market could challenge a similar ordinance on Commerce Clause grounds was not squarely presented. *Id.* at 11 n. 13. The present case, however, presents the issue, which we now answer affirmatively. Even if it is true that Tri–State does not engage in interstate com-

merce itself, it has standing to challenge the Ordinance on Commerce Clause grounds. The Ordinance inflicts an injury in fact on Tri–State, and as a hauler of solid waste, Tri–State falls within the "zone of interests" protected by the Commerce Clause. *Diamond Waste, Inc. v. Monroe County,* 796 F.Supp. 1511, 1516 (M.D.Ga.1992). *See also Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 320 n. 3, 97 S.Ct. 599, 602, 50 L.Ed.2d 514 (1977); *Government Suppliers Consolidating Servs., Inc. v. Bayh,* 753 F.Supp. 739, 761 (S.D.Ind.1990), *aff'd,* 975 F.2d 1267, 1274–75 (7th Cir.1992).

■ The "Dormant Commerce Clause"[5] prohibits states and their political subdivisions from "advanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state." *Fort Gratiot,* —— U.S. at ——, 112 S.Ct. at 2023. A neutral regulation that imposes only an incidental burden on interstate commerce is valid as long as that burden is not "clearly excessive in relation to the putative local benefits" the regulation is designed to serve. *Stephen D. DeVito, Jr. Trucking v. Rhode Island Solid Waste Management Corp.,* 770 F.Supp. 775, 780 (D.R.I.) (citing *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986), *aff'd per curiam,* 947 F.2d 1004 (1st Cir.1991)). On the other hand, if the interference is nothing more than "economic protectionism," benefitting in-state economic interests at the expense of out-of-state competitors, the regulation is deemed unconstitutional *per se. Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

■ Gray's Ordinance does not facially discriminate against out-of-state interests, and so it escapes *per se* invalidity. Rather, Gray's Ordinance appears to pursue legitimate local goals, by gaining control of the waste stream and promoting recycling and energy recovery. The Ordinance, however, has a discriminatory effect on interstate com-

5. "The dormant Commerce Clause, as the term 'dormant' implies, limits the powers of the States in areas where Congress has not affirmatively acted to either authorize or forbid the challenged state activity." *Norfolk Southern Corp. v. Oberly,* 822 F.2d 388, 392 (3d Cir.1987). *See New Energy Co. v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988) (referring to the "negative aspect" of the Commerce Clause).

merce by prohibiting waste that would otherwise be available for interstate trade from crossing the state line. *Waste Systems Corp. v. County of Martin,* 784 F.Supp. 641, 645 (D.Minn.1992). Gray and RWC must therefore show valid reasons for this Ordinance other than economic protectionism and must also show that reasonable alternatives to the Ordinance are unavailable. *City of Auburn,* 630 A.2d at 234 (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383) (1977)).

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.