## TRI–STATE RUBBISH, INC.

### v.

## TOWN OF NEW GLOUCESTER.

Supreme Judicial Court of Maine.

Argued Nov. 19, 1993.
Decided Dec. 9, 1993.

Ralph A. Dyer (orally), Portland, for plaintiff.

Carl E. Kandutsch (orally), Michael Healy, Verrill & Dana, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Tri–State Rubbish, Inc. ("Tri–State"), appeals from the summary judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*) in favor of the Town of New Gloucester ("the Town"). Tri–State challenges the Town's Waste Disposal Ordinance and Mandatory Recycling Ordinance (collectively "the Ordinance"), arguing (1) that the Ordinance violates Tri–State's constitutional right to due process; (2) that the Ordinance violates Tri–State's right to equal protection; (3) that the Town selectively enforces the Ordinance against Tri–State; (4) that the Ordinance effects an unconstitutional taking of Tri–State's property; and (5) that state law preempts the Ordinance. We affirm the judgment of the Superior Court.

Since 1986, the Town of New Gloucester has required that waste generated in New Gloucester be delivered to the Mid–Maine Waste Action Corporation ("MMWAC") in Auburn. The Town routinely paid the tipping fees charged by MMWAC. Effective August 7, 1991, the Town enacted an Ordinance requiring that recyclable materials be separated from nonrecyclable waste. The Ordinance directs that all recyclable materi-

als be delivered to the Town Transfer Station. Persons hauling their own waste may also deposit their waste at the Transfer Station. Commercial Haulers must dispose of waste collected by them at MMWAC. There is a fine of $2/bag of unseparated waste imposed on a New Gloucester resident. If a commercial hauler fails to separate the waste collected by it, the hauler must pay a $75/ton tipping fee. Tri–State, the only hauler in New Gloucester using a packer truck, does not comply with the Ordinance's separation requirement, and disposes of the waste collected by it at Maine Energy Recovery Corporation ("MERC") in Biddeford, where the tipping fees are $35/ton.

The Ordinance explicitly lists the items deemed recyclable by the Town.[1] By its terms, the Ordinance requires that all such materials be separated from non-recyclable waste. In practice, the Town requires only reasonable efforts to comply. An attendant at the Transfer Station determines whether reasonable efforts have been made.

In July, 1991, Tri–State filed a complaint against the Town, requesting a declaratory judgment that the Ordinance is invalid and an injunction preventing the Town from enforcing it. The Town subsequently filed its own complaint against Tri–State, requesting that Tri–State be enjoined from collecting waste in the Town and that the court order Tri–State to pay the fines already assessed against it for violations of the Ordinance. Both parties moved for a summary judgment, the cases were consolidated, and the court ruled in favor of the Town.

## I. Due Process [2]

Tri–State first attacks the Ordinance, asserting that to require 100% separation of recyclable materials from solid waste is an unreasonable, arbitrary, and capricious manner of exercising the Town's police power,

---

1. The Ordinance lists the following materials as recyclable: newspapers, tires, glass, cans, cardboard, and paper bags. The Ordinance lists several other materials as "currently not being recycled but may be required at a later date": phone books, mixed paper, computer paper, ledger paper, magazines, and various plastics.

2. "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A. The Maine Constitution and United States Constitution declare identical rights to due process. *Fichter v. Board of Envtl. Protection*, 604 A.2d 433, 436 (Me.1992); *Penobscot Area Hous. Dev. Corp. v. City of Brewer*, 434 A.2d 14, 24 n. 9 (Me.1981).

and therefore violates Tri–State's constitutional right to due process. *Tisei v. Town of Ogunquit,* 491 A.2d 564, 569 (Me.1985). *See City of Auburn v. Tri–State Rubbish, Inc.,* 630 A.2d 227, 232 (Me.1993). Tri–State argues that 100% separation is unachievable. We agree with the Superior Court that "[a]chieving one hundred percent compliance may be a challenge," but we "cannot find that it is a challenge that cannot be met." In any event, there is a rational relationship between the separation of recyclable materials from non-recyclable waste and the Ordinance's stated goal—to encourage recycling. *See Town of Boothbay v. National Advertising Co.,* 347 A.2d 419, 422 (Me.1975). The Ordinance is therefore a proper exercise of the Town's police power.

▆▆▆ Tri–State further argues that the Town enforces the Ordinance in violation of its constitutional right to due process, because the Town's requirement of only reasonable efforts to comply is unconstitutionally vague. According to Tri–State, by requiring only reasonable efforts to comply, the Town both provides unlimited discretion to the Station Attendant and implicitly acknowledges that the Ordinance's requirement of 100% compliance is unreasonable. Neither assertion has any merit. To survive a challenge for vagueness the Ordinance, or in this case its enforcement, must clearly define its prohibitions and put a person of common (or reasonable) intelligence on notice of what is prohibited. *Brasslett v. Cota,* 761 F.2d 827, 838 (1st Cir.1983); *Auburn Police Union v. Tierney,* 756 F.Supp. 610, 616 (D.Me.1991). The Ordinance explicitly enumerates the items that the Town designates as recyclable, and thereby provides clear guidelines to the Station Attendant, who is responsible for enforcement. *See Browning–Ferris Indus. of Alabama, Inc. v. Pegues,* 710 F.Supp. 313, 315 (M.D.Ala.1987) (laws must include guidelines for enforcement). "Reasonable" compliance is not an unconstitutionally vague concept. If it were, most tort law doctrines and a host of other legal standards would be

invalid—the reasonable person, beyond reasonable doubt, reasonable good faith efforts, etc. Reasonable people in the Town of New Gloucester undoubtedly understand what the Ordinance prohibits.

## II. Equal Protection [3]

▆▆▆ Tri–State's equal protection and selective prosecution contentions are also without merit. *See City of Auburn v. Tri–State Rubbish, Inc.,* 630 A.2d at 232–33. A selective prosecution claim requires a showing of discriminatory intent. *Id.; Aucella v. Town of Winslow,* 583 A.2d 215, 216 (Me.1990). As in the *City of Auburn* case, Tri–State neither alleges nor offers any evidence of discriminatory purpose or intent. The fact that the Ordinance's requirements fall most heavily on the largest waste hauler in the Town is logical, not discriminatory. No other business in New Gloucester is similarly impacted by the Ordinance, because there is no other similar business in the Town.

▆▆▆ Equal protection analysis hinges on the standard of review. If the law at issue infringes a fundamental constitutional right or involves an inherently suspect classification, such as race or religion, then the law is subjected to strict scrutiny. *McNicholas v. York Beach Village Corp.,* 394 A.2d 264, 268 (Me.1978). The right to do business is not a fundamental constitutional right that would invoke strict scrutiny for equal protection violations. *Tri–State Rubbish, Inc. v. Town of Gray,* 632 A.2d 134, 136 (Me.1993) (rejecting nearly identical equal protection claim); *State v. Rush,* 324 A.2d 748, 753 (Me.1974). Therefore, to satisfy the Equal Protection Clause, the Town's Ordinance must rationally be related to a legitimate state interest. *McNicholas,* 394 A.2d at 268. New Gloucester's Ordinance meets this standard.

## III. The Takings Clause [4]

▆▆▆ We also reject Tri–State's argument that the Ordinance effects an unconsti-

---

**3.** "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A. The Maine and United States Constitu-

tions guarantee the same right to equal protection.

**4.** "... nor shall private property be taken for public use, without just compensation." U.S.

tutional taking of its property. *See City of Auburn v. Tri–State Rubbish, Inc.*, 630 A.2d at 232 (rejecting similar argument). Laws may exact costs from private businesses as a reasonable use of police power. *Maine Beer & Wine Wholesalers Ass'n v. State*, 619 A.2d 94, 99 (Me.1993). The purpose of the Ordinance is legitimate and the methods used bear a rational relationship to the intended goal. *See id.* To establish a regulatory taking of its property, Tri–State would have to show that either the purpose of the regulation or the extent of the burden on Tri–State suggests that the Ordinance unfairly singles out Tri–State to bear a burden that should be borne by the Town as a whole. *Yee v. City of Escondido,* —— U.S. ——, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992). Tri–State alleges that it has been singled out but offers no evidence to support its claim. In fact, the undisputed facts show that Tri–State's unique financial burdens are the result of its status as the only large-scale, commercial waste-hauler in Town, combined with its refusal to make any effort to comply with the Ordinance.

### IV. State Law Preemption

 Finally, Tri–State argues that the Maine Waste Management Act ("WMA") preempts the Ordinance. Tri–State essentially claims that New Gloucester's Ordinance defeats the purpose of the WMA by requiring that waste be separated for recycling, when the "highest and best use" for that waste is incineration. Tri–State's challenge to the Ordinance is premised on the fact that some otherwise recyclable materials may be rendered unsuitable for recycling by contamination from other waste.

WMA defines "recyclable" as "possessing physical and economic characteristics that allow a material to be recycled." 38 M.R.S.A. § 1303–C (Supp.1992–1993). The Town's Ordinance lists thirteen items that, when clean, are suitable for recycling. As we have said before, "38 M.R.S.A. § 1304–B(2) gives the [Town] authority to remove recyclables from the waste stream. The au-

thority to remove recyclables allows the [Town] to comply with the state recycling policy without violating its flow control ordinance or its agreement with MMWAC." *City of Auburn v. Tri–State,* 630 A.2d at 231 n. 7. Where possible, we construe local ordinances so as to comply with state legislation. *See Blouin v. City of Rockland,* 441 A.2d 1008, 1009 (Me.1982); *State v. Davenport,* 326 A.2d 1, 6 (Me.1974) (cardinal principle is to "save not destroy"). By listing materials as recyclable, the Ordinance complies with Maine law. There is no merit to Tri–State's position.

The entry is:

Judgment affirmed.

All concurring.

---

Const. amend V (applied to the States through the Fourteenth Amendment—*Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 231, 104 S.Ct. 2321, 2324, 81 L.Ed.2d 186 (1984)); Me. Const. art. I, § 21.