Rodney P. **CHOROSZY**

and

Debra **Choroszy**

v.

Siew S. **TSO.**

Supreme Judicial Court of Maine.

Argued June 21, 1994.
Decided Sept. 20, 1994.

---

Robert H. Furbish (orally), Smith, Elliott, Smith & Garmey, Portland, for plaintiffs.

Gerald F. Petruccelli, Petrucelli & Martin, Portland, for amicus curiae.

Deborah L. Pope (orally), Christopher D. Nyhan, Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

■ Rodney and Debra Choroszy appeal from the judgment entered in the Superior Court (York County, *Fritzsche, J.*) granting Siew S. Tso's motion to dismiss the Choroszys' action as barred by the medical malpractice statute of limitations. 24 M.R.S.A. § 2902 (1990).[1] The Choroszys contend that the statute of limitations violates the "Open Courts" provision of the Maine Constitution, Me.Const. art. I, § 19, and the equal protection clauses of the Maine and United States Constitutions. Me.Const. art. I, § 6–A; U.S. Const. amend. XIV. We find no constitutional violation and therefore we affirm the judgment.

■ Because the Choroszys appeal from the dismissal of their claim, M.R.Civ.P. 12(b)(6), we accept as true the allegations in their notice of claim. *See Hall v. Board of Env'tl Protection,* 498 A.2d 260, 267 (Me. 1985) (examined complaint for alleged facts that would support recovery under some theory). The notice of claim asserts that Rodney Choroszy consulted Tso in January 1988 after Choroszy noticed some hearing loss in his left ear. Tso examined Choroszy, conducted an audiological evaluation that confirmed the hearing loss, and ordered a CT Scan at the Southern Maine Medical Center in February 1988. The report issued by the Medical Center to Tso stated that: "I do not see any obvious enhancing tissue here, however small lesions could be missed. For further evaluation, if there are symptoms relating to the left side, should include magnetic resonance imaging of this area." The notice of claim further asserts that Tso told Choroszy his CT Scan was negative, never provided Choroszy with a copy of the report, and never suggested magnetic resonance imaging.

Choroszy's condition remained unchanged until the fall of 1992 when he experienced facial numbness, further hearing loss, and problems with vision and balance. Choroszy then consulted another doctor, who referred him to a neurosurgeon, Thomas Mehalic, who found a tumor in Choroszy's left ear canal. The notice of claim asserts that prior to the fall of 1992, Choroszy was unaware of any reason to doubt Tso's 1988 diagnosis, and as a result of Tso's negligent misdiagnosis and treatment, Choroszy has suffered significant injury.

The Choroszys filed a statutory notice of claim against Tso on February 17, 1993, nearly five years after Choroszy's last contact with Tso. The doctor responded with a successful Rule 12(b)(6) motion to dismiss the claim as barred by the three-year statute of

---

1. Medical malpractice actions in Maine are commenced by filing a notice of claim on the person accused of professional negligence. 24 M.R.S.A. § 2903 (1990). The claimant must then present her claim to a pre-litigation panel before pursuing the claim in the court system. 24 M.R.S.A. §§ 2851–59 (1990). By agreement of the parties or at the direction of the panel chair, however, the Superior Court may resolve "dispositive legal affirmative defenses ... prior to submission of the case to the panel." 24 M.R.S.A. § 2853(5). The statute of limitations defense was appropriately submitted to the Superior Court in the form of a motion to dismiss the Choroszys' claim. For procedural purposes, we treat the Choroszys' notice of claim as a complaint challenged by a Rule 12(b)(6) motion to dismiss.

limitations for professional negligence. 24 M.R.S.A. § 2902 (1990).[2] The Choroszys' timely appeal followed.

### I. The Open Courts Provision of the Maine Constitution [3]

We are asked the constitutional question whether by requiring a medical malpractice victim to discover his injury within three years of the act or omission "giving rise to" the injury, the Legislature has imposed "time limits so unreasonable as to deny meaningful access to the judicial process" and violated the Open Courts provision of our Maine Constitution. *Maine Medical Ctr. v. Cote,* 577 A.2d 1173, 1176 (Me.1990). The Choroszys' position is that they did not know *and reasonably could not* have known about the negligent misdiagnosis by Tso until Fall 1992. According to the Choroszys, it is unreasonable to cut off a cause of action before the potential claimant could reasonably discover that he has a cause of action.

The judgment of our Legislature, however, is to the contrary. In 1977, the Legislature debated changing the statute of limitations when it enacted the original Maine Health Security Act, P.L. 1977, ch. 492. The legislative debate reflects the Legislature's awareness of the issues of fairness raised by the passage of a statute of limitations that would cut off some causes of action. *See* Legis.Rec. 2090 (1977) (statement of Rep. Henderson). Ultimately unable to reach a conclusion on the statute of limitations issue, the Legislature resolved to postpone addressing the problem. 2 Legis.Rec. 2091 (1977).[4]

With the issue still unresolved, in *Myrick v. James,* 444 A.2d 987, 997 (Me.1982), we acted to fill in the gap left by the Legislature. We held that in the absence of an explicit legislative directive, we were obligated to define judicially the time of accrual of a cause of action. *Id.* at 989–91. We concluded that in cases of medical malpractice where a foreign object was left in the patient's body, the appropriate time of accrual was at the time the victim should reasonably have discovered the harm done to him. *Id.* [5]

In 1985, in response to a growing concern for the costs of health care and medical malpractice insurance, our Legislature again considered medical malpractice litigation. *See* P.L.1985, ch. 804. After a two-year study, 2 Legis.Rec. 1165 (1986) (statement of Sen. Carpenter), and much debate, *see, e.g.,* 2 Legis.Rec. 1467 (1986) (statement of Representative Allen) (strong arguments made by both sides), the Legislature amended the Maine Health Care Act to redefine the time

---

**2.** The statute reads in relevant part:

> Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury.... This section does not apply where the cause of action is based upon the leaving of a foreign object in the body, in which case the cause of action shall accrue when the plaintiff discovers or reasonably should have discovered the harm.

24 M.R.S.A. § 2902.

**3.** "Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me.Const. art. I, § 19.

**4.** The 1977 Health Care Act left in place the statute of limitations found in § 753 of title 14—a two-year period after the accrual of the action. 14 M.R.S.A. § 753 (1980). The definition of accrual was left to the judiciary. *See Myrick v.*

*James,* 444 A.2d 987, 989–91 (Me.1982) (redefining accrual in § 753 for cases of medical malpractice). House Amendment E to L.D 727 (108th Legis.1977) would have changed the medical malpractice statute of limitations to two years after the reasonable discovery of the act of malpractice, with an accompanying time of repose, regardless of discovery, six years after the act or omission. The House voted to postpone indefinitely consideration of the amendment. 2 Legis.Rec. 2090–91 (1977). *See also Myrick v. James,* 444 A.2d at 990–91 (discussing the legislative history).

**5.** Eventually, we extended the judicially created discovery rule to apply to victims of misdiagnosis as well. *Bolton v. Caine,* 541 A.2d 924, 925–26 (Me.1988) (extending discovery rule to medical misdiagnosis cases and rejecting contention that issues of proof distinguish foreign object cases); *see also Black v. Ward,* 549 A.2d 371, 372 (Me. 1988) (same point). Those decisions, however, apply to claims filed prior to August 1, 1988. *Black,* 549 A.2d at 372; *Bolton,* 541 A.2d at 926 n. 3. *See* P.L.1985, ch. 804, § 22 (new statute of limitations applies only to claims filed on or after August 1, 1988).

of accrual for medical malpractice causes of action, and foreclosed any further judicial expansion of the discovery rule announced in *Myrick v. James.* L.D. 2400 Statement of Fact (112th Legis.1985) (revised draft) ("The new draft amends the existing statutes of limitations applicable to medical malpractice actions by ... [e]liminating the so-called 'discovery rule' in all cases except 'foreign object' surgical cases."); *see also* L.D. 2065 Statement of Fact (112th Legis.1985) (original bill expresses same intent). As further evidence of the Legislature's caution with regard to the revised statute of limitations, the new statute was not effective until August 1, 1988. P.L.1985, ch. 804, § 22.

■■■ We cannot say the Legislature's decision to provide only a three-year period in which to discover an injury is so unreasonable as to be unconstitutional. *See Maine Medical Ctr. v. Cote,* 577 A.2d at 1176. Prior to the *Myrick* decision, it was well-settled that, absent fraud, failure to discover a cause of action would not toll the statute of limitations. *Tantish v. Szendey,* 158 Me. 228, 237, 182 A.2d 660, 664 (1962). *See also Bozzuto v. Ouellette,* 408 A.2d 697, 699 (Me.1979); *Cole v. McGlathry,* 9 Me. 131, 132–33 (1832). The law remains with regard to most other torts that a cause of action accrues at the time of the judicially recognizable injury, despite the plaintiff's reasonable failure to discover the harm. *See Bangor Water Dist. v. Malcolm Pirnie Eng'rs,* 534 A.2d 1326, 1328 (Me.1988) (declining to adopt discovery rule in a case of an improperly installed underground pipe, emphasizing confidential relationship in medical malpractice).

The Choroszys emphasize the language of the Open Courts provision that guarantees to *every person* a remedy for an injury inflicted. They contend that by foreclosing their cause of action before Mr. Choroszy could reasonably discover its existence, the Legislature has violated this constitutional requirement. All statutes of limitations, however, have the effect of cutting off claims, yet the "power of the legislature to shorten the period of expiration ... has been too often recognized by courts of the highest respectability to be questioned now." *Maine Medical Ctr. v. Cote,* 577 A.2d at 1176 (quoting *Sampson v.*

*Sampson,* 63 Me. 328, 333 (1874)). The Choroszys, and other plaintiffs similarly situated, face a discovery requirement, but that requirement is not unconstitutionally unreasonable.

Although we recognize that the three-year period of repose may cause some hardship for the Choroszys, that hardship was contemplated by the Legislature when it made its policy choice. The weight of authority upholds similar statutes against similar challenges. *See St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 782 P.2d 915, 919–22 (Okla. 1989) (negligent design and construction statute of repose does not violate open courts or equal protection) (case offers extensive appendix listing thirty-three states that have upheld and nine states that have invalidated statutes of repose); Note, Josephine Herring Hicks, *The Constitutionality of Statutes of Repose: Federalism Reigns,* 38 VAND. L.REV. 627, 657–64 (1985) (appendix collecting seventy cases, fifty-one of which find no violation of any constitutional provision). As the Nebraska Supreme Court has explained:

> The immunity afforded by a statute of repose is a right which is as valuable to a defendant as the right to recover a judgment is to a plaintiff; the two are but different sides of the same coin.... These are substantive rights recognized by Nebraska law and protected by its constitution.

*Spilker v. City of Lincoln,* 238 Neb. 188, 469 N.W.2d 546, 548 (1991) (quoting *Givens v. Anchor Packing, Inc.,* 237 Neb. 565, 466 N.W.2d 771, 773–74 (1991). *See also Myrick v. James,* 444 A.2d at 994 (statute of limitations balances several competing interests). We hold that the three-year statutory period in which a medical malpractice victim must discover his injury is not unconstitutionally unreasonable.

## II. Equal Protection

The Choroszys further argue that the statute violates the equal protection clauses of both the United States and Maine Constitutions by irrationally distinguishing medical misdiagnosis victims from foreign-object victims. U.S. Const. amend. XIV; Me.Const. art. I, § 6. We disagree.

■ The equal protection clause of the Maine Constitution guarantees rights equivalent to those in the federal Equal Protection Clause. *Tri–State Rubbish, Inc. v. Town of New Gloucester,* 634 A.2d 1284, 1287 n. 3 (Me.1993). "Equal protection analysis hinges on the standard of review. If the law at issue infringes a fundamental constitutional right or involves an inherently suspect classification, such as race or religion, then the law is subjected to strict scrutiny." *Id.* at 1287. Absent a fundamental right or suspect class, we apply the "rational relationship test," and simply inquire whether the statute is rationally related to a legitimate state interest. *Id.*

■ We have held that the right to pursue a cause of action is not a fundamental right, *Maine Medical Ctr. v. Cote,* 577 A.2d at 1177, and it is settled that medical malpractice tort plaintiffs do not qualify as a suspect class. *See, e.g., Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 830 (1980). Therefore the correct standard of review is the rational relationship test. The state's objective—to control the cost of medical malpractice insurance and of health care in general—is a legitimate one, and a statute of limitations is a rational way to achieve that objective. *See Maine Medical Ctr. v. Cote,* 577 A.2d at 1176 (statute of limitations is a "potent element in any reform of tort law").

■ The distinction between foreign-object plaintiffs and other medical malpractice victims can be justified on an evidentiary basis; finding the object in the plaintiff's body provides irrefutable evidence of negligence. *Allrid v. Emory University,* 249 Ga. 35, 285 S.E.2d 521, 525 (1982); *Ross v. Kansas City Gen. Hosp. & Medical Ctr.,* 608 S.W.2d 397, 399 (Mo.1980). Certainly, there are arguments both ways. *See Bolton v. Caine,* 541 A.2d 924, 926 (Me.1988) (rejecting evidentiary rationale); *Hicks, supra* at 634–635 (plaintiffs carry burden of proof so evidentiary concerns are unpersuasive; studies show that statutes of repose do not improve insurance rates; statutes of repose unfairly protect certain interest groups). Once the Legislature has evaluated those arguments and made a policy choice, however, we cannot adopt the opposite view unless the legislative action is unconstitutional. *See Myrick v.*

*James,* 444 A.2d at 997. The Legislature's decision to impose a statute of repose is rationally related to a legitimate goal and therefore valid under an equal protection analysis. *Houk v. Furman,* 613 F.Supp. 1022, 1032–35 (D.Me.1985) (rejecting similar challenge).

The entry is:

Judgment affirmed.

WATHEN, C.J., CLIFFORD and LIPEZ, JJ., concurring.

ROBERTS, Justice, with whom GLASSMAN and DANA, JJ., join, concurring.

I agree to affirm the decision of the Superior Court. I write separately because I do not agree with the analysis of Part I of the Court's opinion. Instead, I would adopt the reasoning of the trial court.

Rather than accept the Choroszys' position that they "reasonably could not have known" of the negligence of Tso, the trial court analyzed the difference between Choroszy's situation and that of the foreign object surgical malpractice patient. I agree with that court's conclusion, that it would not be unreasonable to expect Choroszy to seek a second opinion or to return to Tso because his hearing had not improved. In such circumstances, the application of the three-year statute of limitations cannot be said to violate Article I, section 19 of the Maine Constitution.