STATE OF MAINE

SOMERSET, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-013
JMJ - SON - 1/25/2008

MAETTA DICKEY and
TODD DICKEY,

Claimants

v.

GERALD E. VERMETTE, D.D.S.,
Et al.

Respondents

DECISION AND ORDER

DONALD L. GARRRECHT

FILED 1 5

This case is in front of the court on respondent Vermette's M.R. Civ. P. 56 motion

for partial summary judgment. He seeks this court's determination that any claims

based on violation of the standard of care occurring more than three years before

commencement of this action are barred by the Maine Health Security Act's three-year

statute of limitations at 24 M.R.S.A. § 2902. Additionally he seeks summary judgment

on claimants' fraudulent concealment theory that would effectively toll the statute of

limitations period.

Claimants commenced this action via a notice of claim on February 23, 2006.[1]

Respondents on May 4, 2007 filed with the Prelitigation Screening Chair a motion *in*

*limine* to exclude at the panel hearing evidence of alleged violations of the standard of

care prior to February 23, 2003. The claimants asserted that the limitations should be

tolled based on fraudulent concealment pursuant to 14 M.R.S.A. § 859. On June 6, 2007,

the Panel Chair granted the motion. Because the Panel Chair's ruling does not operate

as a judgment as to any claims, the parties have agreed that considerations of judicial

---

[1] Thus, notwithstanding tolling of the statute or the existence of the continuous treatment doctrine, the 3-year statute of limitations period would bar any claims arising from acts or omissions occurring before February 23, 2003.

economy favor seeking this court's ruling on the subject so that claims timely brought are litigated at the Panel hearing.

Respondent filed this motion with a statement of material facts (RSMF), claimant responded with an opposing statement of material fact (COSMF) and a statement of additional material facts (CSAMF) to which respondent replied (RRSMF). These statements of material facts reveal many disputes, but as to the issues of respondents' summary judgment motion this court will elucidate the facts in a light most favorable to the claimants as nonmoving parties. *Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 12, 932 A.2d 539, 543.

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123, 127 (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

## Facts

Maetta Dickey began as a patient at respondent's dental practice in 1993 or 1994. CSAMF ¶ 1; RRSMF ¶ 1. In March of 2000, respondent took a panoramic x-ray of Dickey's jaw that revealed a dark spot around tooth # 18. RSMF ¶¶ 3-4; COSMF ¶¶ 3-4. Respondent Vermette does not recall viewing the x-ray prior to 2005 or examining the tissue around tooth # 18. RSMF ¶¶ 15, 20-24; COSMF ¶¶ 15, 20-24; CSAMF ¶ 2; RRSMF ¶ 2. An oral hygienist, Ms. Germain, did view the x-ray and noted the black spot near tooth #18 was "odd." CSAMF ¶ 4; RRSMF ¶ 4. Germain expressed no concern in relation to the irregularity on the x-ray. CSAMF ¶ 5; RRSMF ¶ 5. On several occasions

subsequent to the initial visit, Germain would look at the tissue noting its abnormality. CSAMF ¶ 7; RRSMF ¶ 7. On subsequent visits, Germain noted her observations to another dentist, Dr. Clukey, who stated the practice would "keep on eye on it." CSAMF ¶ 8.[2] In 2005, a second x-ray was taken showing that the dark spot had grown in size. CSAMF ¶ 9.[3] Respondent Vermette first recalls seeing the 2000 x-ray upon the 2005 x-ray being brought to his attention by another dentist. CSAMF ¶ 10; RRSMF ¶ 10. Claimant was then referred to an oral surgeon who took a biopsy of the affected area confirming mucoepidermoid carcinoma. CSAMF ¶¶ 11-12; RRSMF ¶¶ 11-12.

## Discussion

In response to respondent's summary judgment motion, claimants make two arguments: 1) respondent fraudulently concealed claimant's condition thus tolling the statute of limitations pursuant to 14 M.R.S.A. § 859; and 2) notwithstanding the fraudulent concealment claim, the statute of limitations period should not have begun running until the course of treatment ended based on the continuous treatment doctrine.

### Fraudulent Concealment

"When a cause of action is 'fraudulently concealed' from a patient, the statute of limitations is six years and does not commence until the patient 'discovers' the cause of action." *Farnum v. Oral Surgery Associates*, 2007 ME 140, ¶ 8, 933 A.2d 1268, 1271(citing 14 M.R.S.A. § 859). In order to extend the statute of limitations period, claimants must prove that respondent "actively concealed material facts from [Ms. Dickey] and that she relied on their acts and statements to her detriment, or...that a special relationship

---

[2] Respondent qualifies this statement of material fact, noting that Dr. Clukey does not remember saying this and that Claimant admits to never having discussed this matter with Dr. Vermette. RRSMF ¶ 8. This court however assumes the veracity of this statement to resolve the summary judgment motions.

[3] Respondent qualifies this statement of material fact, noting that Dr. Clukey stated that "the bony contour and architecture had changed" rather than the dark spot had grown in size. RRSMF ¶ 9.

existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor the duty." *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 21, 819 A.2d 1014, 1026 (quoting *Harkness v. Fitzgerald*, 1997 ME 207, ¶ 6, 701 A.2d 370, 372). When, as here, a claimant:

> contends a genuine issue of material fact concerning the defendant's fraudulent concealment has been generated, the court assesses the facts against the elements of fraud "(1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purposes of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other."
> When a "special relationship" exists, that is a fiduciary relationship, "omission by silence may constitute the supplying of false information." Generally, in such a relationship, where the defendant knows particular facts and does not disclose them causing the plaintiff to rely on those facts, an *inference* of fraud is appropriate.

*Id.* at ¶¶ 21-22, 819 A.2d 1014, 1026 (quoting *Harkness*, ¶ 7, 701 A.2d at 372; *Glynn v. Atalntic Seaboard Co.*, 1999 ME 5, ¶ 12, 728 A.2d 117, 121).

Respondent argues that whether based on affirmative misrepresentation or omission of fact, fraudulent concealment requires that the doctor has knowledge of particular facts and a purpose to mislead. Claimants note that Dr. Vermette's failure to review the 2000 x-ray ensured that it would lay dormant until 2005 and acted as a "constructive concealment" of the information contained in the x-ray thus preventing claimants from discovering it within the applicable statutory period. Additionally, they note that had Dr. Vermette viewed the x-ray he "should have" noted the irregularity and referred Mrs. Dickey to a specialist or followed up with further x-rays. The facts viewed in a light most favorable to the claimants do not reveal that Dr. Vermette knew of the results of Mrs. Dickey's x-ray and remained silent with the purpose of misleading her as to those results. Quite the contrary, they reveal that he did not (though perhaps should have) know the results of the x-ray, and remained silent not with the purpose of misleading but because he was fully ignorant of the results. There is no genuine issue

of material fact as to whether Dr. Vermette fraudulently concealed the results of the x-ray.

## Continuous Treatment Doctrine

In the one Maine case endorsing acceptance of the "continuous treatment" doctrine, then Superior Court Justice Lipez explained, "[u]nder the continuous treatment doctrine, the statute of limitations for all the acts of the defendant is tolled until the physician-patient relationship ends." *Viel v. Anson*, CUMSC-CV-87-359, at 8 (Me. Super. Ct. Cum. Cty., 1987) (Lipez, J.). The doctrine is supported by a couple of justifications. "One justification...is that a patient, while in the care of a physician, will rely on the skill and professional competence of the physician and will not question the treatment being received." *Id.* "Another justification is that the negligent course of treatment is a continuing tort and the plaintiff's damage is not complete until the final act." *Id.* at 9.

Claimants here argue that there is a genuine issue of material fact as to whether a continuing course of treatment exists pointing to the series of appointments in which she, Germain, and possibly some of the dentists discussed that they would "keep an eye on it." Thus, if Maine recognizes the "continuous treatment" doctrine, summary judgment is not appropriate because a genuine issue of material fact exists as to whether there was a continuing course of treatment and whether accordingly the statute of limitations should be tolled "until the earliest date when a patient can be deemed to be on notice of any possible damage; the date on which the treatment ends." *Id.* at 10. Before such a conclusion is reached it must first be determined whether the State of Maine recognizes the "continuous treatment" doctrine.

*Viel* predates the current incarnation of the statute of limitations applicable to actions against health care providers, 24 M.R.S.A. § 2902.[4] 24 M.R.S.A. § 2902 provides that "[a]ctions for professional negligence shall be commenced within 3 years after the cause of the act or omission giving rise to the injury." The "act or omission giving rise to the injury" accrual date, however does not apply to situations "where the cause of action is based upon the leaving of a foreign object in the body," in those cases the cause of action "shall accrue when the plaintiff discovers or reasonably should have discovered the harm." Nonetheless, claimants argue that Justice Lipez's finding that "the continuous treatment doctrine is consistent with the Law Court's emphasis on a cause of action accruing when the plaintiff is damaged by the defendant," withstands and is consistent with the legislature's adjustment to the statute of limitations in medical malpractice suits. *Id.* at 9.

Subsequent to the 1988 amendments to the statute of limitations, a decision of the Law Court discussed but did not answer the question whether Maine recognizes the continuous treatment doctrine. In *Welch v. McCarthy*, 677 A.2d 1066, 1069 (Me. 1996), the Law Court recognized the defendant's argument that the plaintiffs' action was "time-barred given that Maine has not adopted a 'continuous treatment' rule." In *Welch*, the question was whether a plaintiff's claim against an oral surgeon for failing to warn her of problems associated with TMJ implants was time-barred. The surgery was performed in 1984; the surgeon allegedly had become aware of problems with the implants in 1987; the surgeon informed her of the problem in 1992; and she brought suit in 1993. The Court did not specifically address the continuous treatment doctrine

---

[4] The statute of limitations then applicable was 2-years per 14 M.R.S.A. §753 (1980) and provided, "Actions for assault and battery, and for false imprisonment, slander, libel and malpractice of physicians and all others engaged in the healing art shall be commenced within 2 years after the cause of action accrues."

argument, instead it held that each day that the surgeon failed to contact her was potentially a separate breach of the duty of care. Respondents argue that the Law Court's notation of the defendant's argument as to the absence of a the "continuous treatment" doctrine in Maine was taking that proposition as a "given."

This court does not agree with respondents that the Law Court, in *Welch*, took as a given that 24 M.R.S.A. § 2902 settled the question whether a continuous treatment doctrine exists in Maine. Similarly, the Superior Court's recognition of the doctrine, which Justice Lipez noted had not been "accepted or rejected" by the Law Court, does not mean that such a doctrine exists in Maine especially in light of the passage of 24 M.R.S.A. § 2902. *Viel* at 9.

Thus this court takes up the question whether the legislature intended such a doctrine to exist in drafting 24 M.R.S.A. § 2902 without clear precedent from any Maine court.

> When interpreting a statute, our objective is to give effect to the Legislature's intent. To determine the intent, we look first to the statute's plain meaning. If there is no ambiguity, we do not examine the legislative history. If ambiguity exists, we look beyond the statutory language to its legislative history. We also consider the whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature may be achieved.

*Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159 (citations omitted).

The statute, to this court, is quite clear. It sets a three-year statute of limitations that accrues upon the "act or omission giving rise to the injury." The statute provides exceptions for minors (14 M.R.S.A. § 853), the above discussed fraudulent concealment exception (14 M.R.S.A. § 859), and in the instance of foreign objects left in the body provides that the accrual point is "when the plaintiff discovers or reasonably should have discovered the harm." This last instance is the legislature's codification of the exception recognized by the Law Court in *Myrick v. James*, 444 A.2d 987 (Me. 1982).

In *Myrick*, the Law Court interpreting the then applicable 14 M.R.S.A. § 753 was "faced with a statute which does not specify when the two-year period of limitations commences to run; the Legislature has not provided a definition of "accrues" applicable to foreign-object surgical malpractice suits." *Id.* at 989. Thus, "[a]bsent any 'explicit legislative direction' which would otherwise foreclose our consideration of the meaning of 'accrual,' the process of defining the term remains a judicial function." *Id.* at 989-90. Now applicable 24 M.R.S.A. § 2902 *does* provide explicit legislative direction as to the foreign-object malpractice suit situation by codifying Myrick's "discovery rule." More importantly for this case, 24 M.R.S.A. § 2902 also provides explicit legislative direction as to the standard malpractice case's accrual point, and "[w]hile the statutory scheme may be deemed unfair or harsh, we decline to circumvent it when the Legislature has explicitly decided the issue, and 'divested this Court of its responsibility to define when a...malpractice action accrues.'" *Dasha v. Maine Medical Center*, 665 A.2d 993, 996 (Me. 1995) (quoting *Myrick*, 444 A.2d at 991).

Additionally, Justice Lipez, in *Viel* relied upon *Myrick* in determining that a continuous treatment doctrine was necessary to avoid the possibility that "a patient's case may be unduly prejudiced because the patient justifiably relied on the physician during treatment." *Viel* at 10. Justice Lipez's extension of *Myrick* came prior to 24 M.R.S.A. § 2902, in which the legislature "explicitly outlined the contours of the statute of limitations in medical malpractice" thus leaving the courts no "room...to carve out an exception to these rules." *Dasha*, 665 A.2d at 996. Quite simply, the legislature was aware of *Myrick's* extension of the statute of limitations to foreign-object cases and if not *Viel* specifically, was aware of the continuous treatment doctrine. It chose to codify *Myrick*, it did not choose to codify *Viel* or recognize the continuous treatment doctrine in any form. Similar to the Illinois Supreme Court in *Cunningham v.*

*Huffman*, 609 N.E.2d 321, 324 (Ill. 1993), this court believes it fair to assume the legislature "was aware of such developments and purposefully declined to act."[5]

Claimants cite to a number of other jurisdictions that have held in favor of the continuous treatment doctrine. These cases are for the most part distinguishable. In *Cole v. Ferrell-Duncan Clinic*, 185 S.W.3d 740 (Mo. Ct. App. 2006) interpreting Mo. Rev. Stat. § 516.105[6] expounded on the existence of a "continuing care" exception. In that case, the Missouri Court of Appeals dealt with a doctrine that had been long recognized

---

[5] In *Cunningham*, the Illinois Supreme Court held that if "the General Assembly intended the continuous course of treatment doctrine to be the law of this State, it could have specifically provided so, as the legislative bodies in New York and Texas have done." However, the court did recognize a "continuous tort" or "continuing negligent course of treatment for a specific condition" doctrine. Its recognition of this alternative doctrine was based on the presence of the word "occurrence" in the statute's language "act or omission *or occurrence*." 24 M.R.S.A. § 2902 does not include the term "occurrence" nor any term following "act or omission," thus this court cannot conclude as the Illinois Supreme Court did that it was improbable that the Illinois "General Assembly [unlike the Maine Legislature] intended the word 'occurrence' to be limited to a single event." Because "[h]ad it so intended, it could have simply stated that the statute [as 24 M.R.S.A. § 2902 does] begins to run on the happening of the 'specific act' or 'specific omission.'"

[6] All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of, except that:
(1) In cases in which the act of neglect complained of is introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs; and
(2) In cases in which the act of neglect complained of is the negligent failure to inform the patient of the results of medical tests, the action for failure to inform shall be brought within two years from the date of the discovery of such alleged negligent failure to inform, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligent failure to inform, whichever date first occurs; except that, no such action shall be brought for any negligent failure to inform about the results of medical tests performed more than two years before August 28, 1999. For purposes of this subdivision, the act of neglect based on the negligent failure to inform the patient of the results of medical tests shall not include the act of informing the patient of the results of negligently performed medical tests or the act of informing the patient of erroneous test results; and
(3) In cases in which the person bringing the action is a minor less than eighteen years of age, such minor shall have until his or her twentieth birthday to bring such action.

In no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of or for two years from a minor's eighteenth birthday, whichever is later.

as an exception to the statute by its Supreme Court. *Id.* at 743 (citing *Thatcher v. De Tar*, 173 S.W.2d 760 (1943)). This court does not have similar precedent on which to rely.

Claimants also cite *Mata v. Simpson*, 27 S.W.3d 147 (Tex. App. 2000). That case however dealt with a Texas statute, TEX. REV. CIV. STAT. ANN. § 10.01, that provides the statute of limitations runs from "the occurrence of the breach or tort *or from the date the medical or health care treatment* that is the subject of the claim or the hospitalization for which the claim is made *is completed.*" (emphasis added). The Texas statute, unlike 24 M.R.S.A. § 2902, is a clear example of legislative codification of the continuous treatment doctrine.

Claimants also cite to *Grubbs v. Rawls*, 369 S.E.2d 683, 685 (Va. 1988). That case dealt with Va. Code. Ann. § 8.01-243[7], which far more resembles 14 M.R.S.A. § 753 than it does 24 M.R.S.A. § 2902. Its lack of a defined accrual period makes it a poor comparator to the statutory scheme here in question. Claimants citation to *Coffer v. Arndt*, 732 N.E.2d 815 (Ind. Ct. App. 2000) raises interesting questions not raised and

---

[7] A. Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought *within two years after the cause of action accrues.*

B. Every action for injury to property, including actions by a parent or guardian of an infant against a tort-feasor for expenses of curing or attempting to cure such infant from the result of a personal injury or loss of services of such infant, shall be brought within five years after the cause of action accrues.

C. The two-year limitations period specified in subsection A shall be extended in actions for malpractice against a health care provider as follows:

1. In cases arising out of a foreign object having no therapeutic or diagnostic effect being left in a patient's body, for a period of one year from the date the object is discovered or reasonably should have been discovered; and

2. In cases in which fraud, concealment or intentional misrepresentation prevented discovery of the injury within the two-year period, for one year from the date the injury is discovered or, by the exercise of due diligence, reasonably should have been discovered.

However, the provisions of this subsection shall not apply to extend the limitations period beyond ten years from the date the cause of action accrues, except that the provisions of § 8.01-229 A 2 shall apply to toll the statute of limitations in actions brought by or on behalf of a person under a disability. (emphasis added)

likely not applicable in this case, the Indiana Court of Appeals interpreted its "occurrence-based" statute of limitations to necessarily permit a "discovery-based" accrual period in instances of "diseases or medical conditions with long latency periods" in which the patients are "unable to discover the malpractice and their resulting injury within the two-year statutory period..." *Id.* at 819. The Indiana court reasoned that failure to do so would violate *Article I, Section 23 of the Indiana Constitution*'s Privileges and Immunities Clause, which provides that "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Finally, claimants' citation to *Bruske v. Hille*, 567 N.W.2d 872 (SD 1997) misses the mark, as the statute, S.D. Codified Laws § 15-2-14.1, does not reduce the accrual period to a single act or omission, rather "[a]n action...can be commenced only within two years after the alleged malpractice, error, mistake or failure to cure shall have occurred."

In spite of these distinctions, this court does not intend to infer that there is no merit to the arguments in favor of the continuous treatment doctrine as articulated in *Viel* and in numerous of the above cited cases and as succinctly put by the D.C. Court of Appeals, "it would be ludicrous to expect a patient to interrupt a course of treatment by suing the delinquent doctor." *R.D.H. Communications Ltd. v. Winston*, 700 A.2d 766, 770 (D.C. 1997). It is also not contested that other courts in other jurisdictions have "adopted the doctrine without legislative intent." *Cunningham*, 609 N.E.2d at 324 (citing *Comstock v. Collier*, 737 P.2d 845 (Colo. 1987); *Bixler v. Bowman*, 614 P.2d 1290 (Wash. 1980); *Tamminen v. Aetna Casualty & Surety*, 327 N.W.2d 55 (Wis. 1982); and *Metzger v. Kalke*, 709 P.2d 414 (Wyo. 1985)). However, this court is not alone in refusing to adopt the doctrine in light of a statute that does not explicitly recognize the doctrine. *See Cunningham*, 609 N.E.2d at 324 (citing *Ewing v. Beck*, 520 A.2d 653 (Del. 1987); *Hecht v.*

*First National Bank & Trust Co.*, 490 P.2d 649 (Kan. 1971); and *Hill v. Fitzgerald*, 501 A.2d 27 (Md. 1985)).

24 M.R.S.A. § 2902, which sets a strict occurrence-based accrual period rather than a discovery-based accrual period, has been challenged in the context of latent medical error on three constitutional grounds in two separate cases. First, in *Choroszy v. Tso*, 647 A.2d 803 (Me. 1994), the plaintiff challenged the statute on Open Courts constitutional grounds. The Law Court held that the legislature had not imposed "time limits so unreasonable as to deny meaningful access to the judicial process." *Id.* at 806. The Court reasoned that the legislature had contemplated potential hardships of its occurrence-based statute, and that "the power of the legislature to shorten the period of expiration...has been too often recognized by courts of the highest respectability to be questioned now." *Id.* at 807 (citation and quotation marks omitted).

Also in *Choroszy*, plaintiff argued that the statute violated the Equal Protection clauses of the United States and Maine Constitutions. Plaintiff's argument was that the statute irrationally distinguished between foreign object surgical plaintiffs (to whom a discovery-based accrual period rule is applied) and those suffering from medical misdiagnosis based on other latent problems (to whom an occurrence-based accrual period rule is applied). *Id.* The Law Court found this argument unavailing. "The state's objective—to control the cost of medical malpractice insurance and of health care in general—is a legitimate one, and a statue of limitations is a rational way to achieve the objective." *Id.* at 808. The Court found that the distinction was justifiable on an evidentiary basis, because "finding the object in the plaintiff's body provides irrefutable evidence of negligence." *Id.* Citing *Myrick*, the Court noted that after the legislature had evaluated policy arguments and made a policy decision the Court "cannot adopt the opposite view unless the legislative action is unconstitutional." *Id.*

Finally, in *Dasha* following the Law Court's answer to the questions certified to it by the Federal District Court, the Federal District Court dealt with a Due Process challenge. *Dasha v. Maine Medical Center*, 918 F. Supp. 25, 27 (D. Me. 1996). That court found that no such constitutional infirmity existed in the statute.

> To the extent that the statute generates a harsh result in this case, then, it is for lack of a discovery rule rather than for a lack of an exception...In expressly limiting the application of the discovery rule, the Maine legislature undoubtedly considered the enormous individual human costs of cases just such as this, but decided nonetheless that those costs are outweighed by the pressing need to control health care costs for all.

*Id.* (citations omitted).

The absence of an explicit recognition of the continuous treatment doctrine leads this court to conclude that it was not the intent of the legislature to recognize the continuous treatment doctrine. Given this conclusion it would be beyond the aegis of this court to recognize the doctrine in the absence of a clear legislative intent or an interpretation of the statute by the Law Court allowing recognition of the doctrine. Quite simply, in drafting 24 M.R.S.A. § 2902 the legislature chose a strict occurrence-based accrual period with limited exceptions, rather than a discovery-based accrual period. It chose not to explicitly recognize an exception for the continuous treatment doctrine and this court cannot find that the legislature so intended to deviate from its choice of an occurrence-based accrual period.[8]

In *Welch*, the Court discussed the possibility that a doctor may be negligent at different times during the course of treatment by the doctor. *Welch*, 672 A.2d at 1069-70. Although the court indicates that the claimant may not base the claim of alleged breach

---

[8] The court's interpretation of 24 M.R.S.A. § 2902 is also supported by the legislative history of that section of the Health Safety Act and its subsequent amendments in 1985. Detailed extensively in *Butler v. Killoran*, 1998 ME 147, ¶ 9-10, 714 A.2d 129, 132-33. *See also generally* Kathy Kendall, *Latent Medical Errors and Maine's Statute of Limitations for Medial Malpractice: A Discussion of the Issues*, 53 ME. L. REV. 589 (critiquing the rigidity of 24 M.R.S.A. § 2902's occurrence based statute of limitations).

of standard of care that occurred before February 23, 2003, it does not prevent the claimant from proving that following February 23, 2003, the doctor violated his standard of care by not reviewing, discovering, or otherwise becoming aware of the x-ray which may have shown the existence of cancer. Notwithstanding the allegation that he may have breached his duty of care when he read the x-ray in the year 2000, there was evidence of follow-up appointments, and findings by the hygienist beyond February 23, 2003. The plaintiff is free to prove that a violation occurred after February 23, 2003, and that said violation was a cause of the claimant's injuries.

This ruling limits any claim prior to February 23, 2003, but does not make any ruling regarding the admissibility of evidence surrounding the defendant's treatment prior to February 23, 2003. If this were a jury trial, the court would have to weigh the prejudice from evidence of a prior violation of the standard of care with the relevance and probative value of the evidence as it pertains to the respondent's treatment of the patient following February 23, 2003. The factfinder may consider that whether the respondent failed in his standard of care in the year 2000 along with all the other evidence in the case. However, in order to find that the claimant is entitled to any judgment in her favor, it must find that there was a violation of the standard of care and resulting causation following February 23, 2003.

The entry is

Respondents' motion for summary judgment on claimants' fraudulent concealment count is GRANTED. Because the State of Maine does not recognize the continuous treatment doctrine all claims arising from acts or omissions occurring prior to February 23, 2003 are barred by 24 M.R.S.A. § 2902's three-year statute of limitations.

Dated: January 15, 2008

Joseph M. Jabar
Justice, Superior Court