JOSEPH A. DASHA, THIRD[1] vs. LESTER S. ADELMAN.[2]

No. 96-P-1202.

Suffolk. January 29, 1998. - September 3, 1998.

Present: KASS, SMITH, & FLANNERY, JJ.

*Limitations, Statute of. Repose, Statute of. Medical Malpractice. Conflict of Laws.*

Discussion of choice of law considerations in tort actions involving statutes of limitations in different States [421-423], and discussion of the policies and legislative histories underlying the Massachusetts statute of limitations and the Maine statute of repose applicable to medical malpractice actions [424-426].

This court concluded that, in the circumstances of a medical malpractice action, Massachusetts had a more significant relationship to the parties and the conduct causing the plaintiff's injury than did Maine and the Massachusetts limitations period applied. [426-427]

CIVIL ACTION commenced in the Superior Court Department on June 29, 1993.

The case was heard by *Herman J. Smith, Jr.,* J., on motions for summary judgment.

*David M. Rogers* for the plaintiff.

*Daniel J. Griffin, Jr. (Gail L. Anderson* with him) for the defendant.

FLANNERY, J. The plaintiff (Dasha) appeals from a summary judgment granted by a Superior Court judge in favor of the defendant, Dr. Lester S. Adelman. The gist of the appeal is that the motion judge erred in applying the Maine statute of repose, instead of the Massachusetts statute of limitations, for commencing medical malpractice actions. We reverse.

1. *Background.* We summarize the undisputed facts set forth by the motion judge. On June 13, 1988, while Dasha was a Maine resident, he underwent surgery at the Maine Medical

---

[1]By his guardian and next friend, Margaret S. Dasha.

[2]The Maine Medical Center and a pathologist there were also defendants initially, but only Dr. Adelman remains.

Center (MMC) to remove a brain tumor. A pathologist at MMC diagnosed Dasha as suffering from a glioblastoma multiforme, an aggressive and lethal form of cancer. Dasha's prognosis was extremely poor. Dasha began radiation therapy at MMC on July 5, 1988.

On June 20, 1988, copies of Dasha's CT scans were sent to ·Dr. Mison Chun at the New England Medical Center (NEMC) in Boston to determine whether Dasha might be a candidate for radium implant therapy. On July 1, 1988, four slides of Dasha's tumor were sent to NEMC.

On July 14, 1988, Dasha visited Dr. Chun and Dr. Deborah O. Heros at NEMC. Dr. Chun and Dr. Heros arranged for a scan to take place on August 25, 1988, at which time the radium implants were to be further discussed. In accordance with NEMC protocol, Dr. Chun forwarded Dasha's slides to Dr. Adelman, a neuropathologist with NEMC, to be reviewed. Dr. Adelman asked for twenty more slides, which were sent. On July 29, 1988, Dr. Adelman diagnosed Dasha as having an anaplastic astrocytoma (Grade 3/4), which is a high-grade tumor requiring aggressive treatment.[3] Dasha's high-dosage radiation continued until August 16, 1988. Dasha subsequently met with the doctors at NEMC, who encouraged him to undergo radium implants. Dasha declined that treatment.

In September, 1988, Dasha moved from Maine to Needham, Massachusetts, to live with his sister, Margaret S. Dasha (Margaret). His condition steadily deteriorated from 1988 through 1990, and on March 2, 1989, he executed a power of attorney in favor of Margaret.

In November, 1990, a doctor at Newton-Wellesley Hospital, who was treating Dasha, asked Dr. Adelman to look again at the tissue sample of Dasha's brain tumor, because Dasha was doing better than had been predicted. This time, Dr. Adelman concluded that Dasha had not suffered from a high-grade tumor, as he had previously thought, but suffered from a ganglioglioma, which is relatively benign and carries a favorable prognosis.

On May 9, 1992, Margaret notified MMC of her intent to file

[3]Dr. Adelman's diagnostic term differs from that used by MMC, but we accept the parties' representation that there is no material difference for present purposes.

a lawsuit on behalf of her brother,[4] and shortly thereafter she filed a complaint against MMC in the United States District Court for the District of Maine.[5]

Margaret commenced the present action against MMC, its pathologist, and Dr. Adelman in the Massachusetts Superior Court on June 28, 1993. The complaint alleges that Dasha would not have been subjected to aggressive radiation treatment, which caused severe damage to his brain, if Dr. Adelman had correctly diagnosed Dasha in 1988. The Maine defendants moved to dismiss for lack of personal jurisdiction pursuant to Mass. R.Civ.P. 12(b)(2), 365 Mass. 755 (1974). The motion judge denied the motion.

The Maine defendants and Dr. Adelman then moved for summary judgment, arguing that the Maine statute of limitations applies to the case and bars Dasha's claims. The Maine defendants also maintained that the decision of the United States District Court in Maine precludes this action under principles of res judicata. On June 25, 1996, the motion judge entered summary judgment for all defendants. Dasha appeals the allowance of summary judgment for Dr. Adelman.

2. *Standard of review.* In reviewing an allowance of summary judgment, "we examine whether all material facts have been

---

[4]On May 22, 1992, Dasha was declared legally incompetent, and Margaret was appointed his legal guardian.

[5]The action filed in the United States District Court for the District of Maine was commenced beyond the three-year limitations period set forth in the Maine Health Security Act. According to the Maine statute, a cause of action for medical malpractice "accrues on the date of the act or omission giving rise to the injury." Me. Rev. Stat. Ann. tit. 24, § 2902 (West 1990). Therefore, the cause of action accrued on the date of the alleged misdiagnosis, June 13, 1988. The statute does not contain a discovery rule which would toll the limitations period until the patient should reasonably discover the negligence.

The District Court consequently certified the following question of state law to the Maine Supreme Judicial Court:

> "Whether equitable principles estop a defendant from pleading the statute of limitations as a bar to a medical malpractice action when that defendant's alleged negligent treatment of a plaintiff's brain caused damage such that the plaintiff was deprived of the ability to recognize and file a timely cause of action?"

*Dasha* v. *Maine Med. Center,* 665 A.2d 993, 994 (Me. 1995). The Supreme Judicial Court answered the certified question in the negative. Accordingly, Dasha's action against MMC was dismissed.

established and whether the moving party is entitled to judgment as matter of law. We view the evidence in the light most favorable to the nonmoving party." *Curtis* v. *School Comm. of Falmouth*, 420 Mass. 749, 753 (1995), citing Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

3. *Choice of law.* There is no dispute that Dasha's medical malpractice claim against Dr. Adelman is barred under the Maine three-year limitations period, if that statute is applicable. See Me. Rev. Stat. Ann. tit. 24, § 2902 (West 1990). As previously discussed, under the Maine statute, a cause of action for medical malpractice "accrues on the date of the act or omission giving rise to the injury." *Ibid.* Unlike the Maine statute, the three-year limitations period for medical malpractice actions in Massachusetts, G. L. c. 260, § 4,[6] accrues "when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980).[7] Dasha argues that this is the correct limitations period, and it allows the claim against Dr. Adelman.

The courts of Massachusetts have traditionally, in matters of tort, applied the substantive laws of the jurisdiction wherein the tort occurred. See *Cohen* v. *McDonnell Douglas Corp.*, 389 Mass. 327, 333 (1983). However, we have generally applied our own rules of procedure. See *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. 643, 645 (1994). Characterizing statutes of limitations as procedural, we historically looked to our statutes of limitations rather than to the statutes of limitations of foreign jurisdictions. See *New England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.*, 419 Mass. 658, 659-660 (1995).

The Supreme Judicial Court altered this approach in the *New*

---

[6]General Laws c. 260, § 4, as amended through St. 1987, c. 418, provides, in pertinent part: "Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitoria shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body."

[7]Although it does not affect the present case, we note that by St. 1986, c. 351, the Legislature placed an outside limit on the time for bringing a malpractice action "by adding a statute of repose barring the bringing of an action against a health care provider more than seven years after the act or omission which gave rise to the cause of action." *Plummer* v. *Gillieson*, 44 Mass. App. Ct. 578, 581 (1998).

*England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.* decision, stating, "[F]or the future . . . this court's treatment of the application of statutes of limitations as procedural will no longer be continued. The certainty of the traditional answer as to which statute of limitations to apply does not justify a refusal to apply the statute of limitations of another jurisdiction in particular circumstances." 419 Mass. at 664.

Dasha and Dr. Adelman disagree as to whether the Supreme Judicial Court's doctrine in *New England Tel. & Tel. Co.* v. *Gourdeau, supra,* applies retroactively. Dasha argues that the rule enunciated in the decision — decided March 9, 1995 — was not intended to apply retroactively so as to abort actions already in suit, such as the present case. He urges that our traditional limitations period, including any discovery extension, should be applied as a procedural rule of the forum court.

We conclude, as did the motion judge, that this determination is irrelevant to the present case because the Maine limitations period is a statute of repose, not a statute of limitations. See *Choroszy* v. *Tso,* 647 A.2d 803, 806-807 (Me. 1994) (Supreme Judicial Court of Maine refers to the limitations period, requiring medical malpractice victims to discover injury within three years of act or omission giving rise to injury, as a statute of repose). See also *McGuinness* v. *Cotter,* 412 Mass. 617, 621-622 (1992), which notes the distinction between a statute of repose and a statute of limitations: "[A] statute of limitations generally does not begin to run until the date of the plaintiff's injury or the date that the injury is, or reasonably should have been, discovered. A statute of repose, on the other hand, 'completely eliminates a cause of action' after the time period established has run without regard to the concept of accrual or of discovery. The period in a statute of repose generally begins to run from some 'definitely established event,' such as the date on which the act or omission which forms the basis of the cause of action occurs." (Citations omitted.)

Massachusetts has long taken a functional approach in deciding whether to apply a foreign jurisdiction's statute of repose, "[b]ecause statutes of repose are not clearly procedural for choice of law purposes in the Commonwealth." *Cosme* v. *Whitin Mach. Works, Inc.,* 417 Mass. at 646. In examining conflicts issues using a functional approach, the Supreme Judicial Court has not elected any particular choice-of-law doctrine by name.

See *ibid.*, and case cited. Instead, choice-of-law issues are considered " 'by assessing various choice-influencing considerations,' including those provided in the Restatement (Second) of Conflict of Laws (1971)." *Ibid.* (citation omitted).

"Section 145 of the Restatement[8] provides the general principle 'applicable to all torts and to all issues in tort,' . . . and § 146 of the Restatement[9] provides a principle applicable in issues concerning causes of action involving personal injury." *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. at 646-647. Each section requires that the relevant issue be examined in accordance with the principles stated in § 6 of the Restatement.[10]

---

[8]Restatement (Second) of Conflict of Laws § 145 (1971), entitled "The General Principle," provides:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

[9]Restatement (Second) of Conflict of Laws § 146 (1971), entitled "Personal Injuries," states:

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

[10]Restatement (Second) of Conflict of Laws § 6, entitled "Choice-of-Law Principles," states:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and

We begin by examining the contacts that Maine and Massachusetts have with the parties and the occurrence in this case. See *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. at 647. See also Restatement (Second) of Conflict of Laws § 145(2). Maine is where the injury occurred[11] and was the place of Dasha's residence at the time of the injury and at the time of Dr. Adelman's alleged misdiagnosis. Massachusetts is where the conduct causing the injury occurred,[12] the place of Dasha's residence since September, 1988, and the place of Dr. Adelman's residence and employment. Moreover, Massachusetts is the place where the relationship between the parties was centered.[13]

In accordance with § 146 of the Restatement, the law of Maine (the State where the injury occurred) applies, unless Massachusetts has a more significant relationship to the occurrence and the parties under the principles stated in § 6. We, therefore, consider the factors listed in § 6 to decide if Massachusetts has a more significant relationship.[14] See *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. at 647.

---

international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

[11]We consider Maine to be where the injury occurred because the alleged injury is the unneeded radiation treatments, and these were all administered in Maine.

[12]Dr. Stocks, a staff pathologist at MMC, gave Dasha the first misdiagnosis, and this occurred in Maine. We, however, focus on the misdiagnosis of Dr. Adelman that also allegedly caused Dasha's injury, and this occurred in Massachusetts.

[13]The relationship between Dasha and Dr. Adelman, although indirect, was centered in Massachusetts. Dasha visited Dr. Chun and Dr. Heros in Massachusetts at NEMC to determine whether he might be a candidate for radium implant therapy. Dasha had no direct contact with Dr. Adelman. However, as a neuropathologist with NEMC, Dr. Adelman reviewed Dasha's slides in accordance with NEMC protocol. It was this review that allegedly resulted in Dr. Adelman's misdiagnosis and Dasha's continued high dosage radiation, which caused his injury.

[14]The only factors in § 6 that point us in a particular direction are the relevant policies of the forum and the other interested State. We find no guidance in the remaining factors. Compare *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. at 649-650.

We examine the relevant policies underlying medical malpractice actions in Maine and Massachusetts. The Maine Legislature, for several years, debated the appropriate medical malpractice statute of limitations. See *Choroszy* v. *Tso*, 647 A.2d at 806-807 (outlining historical legislative debate in Maine over eliminating the so-called discovery rule in medical malpractice cases). Ultimately, the Maine Legislature redefined the time of accrual for medical malpractice causes of action to be three years from the date of the act or omission giving rise to the injury, and eliminated the discovery rule in all cases except foreign object surgical cases. See *ibid.* The Legislature contemplated the issues of fairness raised by the passage of a statute of limitations that would cut off some causes of action, but the Legislature chose to cut off medical malpractice actions in order to reduce the costs of health care and medical malpractice insurance. See *id.* at 806.

Prior to 1986, the Legislature of Massachusetts, unlike Maine, had not given explicit legislative direction on the issue. Therefore, the determination of when a medical malpractice cause of action accrues, causing the statute of limitations to begin to run, was the product of judicial interpretation. See *Franklin* v. *Albert*, 381 Mass. at 617. The Supreme Judicial Court concluded that a statute that bars a medical malpractice action before the plaintiff reasonably could know of the harm he suffered is a "manifest injustice." *Id.* at 618. Accordingly, the court brought the "Commonwealth in line with the vast majority of States that have adopted some form of discovery rule" and held that medical malpractice actions "accrue when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." *Id.* at 619.

The court considered arguments that a discovery rule would "fan the medical malpractice crisis by resulting in more claims that w[ould] in turn contribute to higher insurance premiums and, . . . curtail[] . . . health care services." *Ibid.* However, the court concluded that these considerations are better left to the Legislature, which is "free to make a contrary reconciliation of the conflicting policies involved or to place an outside limit on the time for bringing a malpractice action." *Ibid.*[15]

The Legislature responded to the *Franklin* v. *Albert* decision

---

[15]The court's discussion also noted that, as far as increased claims, "the Legislature has provided a rational means of weeding out frivolous claims through the medical malpractice screening procedure established by St. 1975,

by the 1986 amendment to G. L. c. 260, § 4. "In order to counter the effect of this decision on the cost of malpractice insurance and its resulting effect on the cost of health care, the Legislature amended the applicable statute of limitations for medical malpractice claims for both minors and adults by adding a statute of repose barring the bringing of an action against a health care provider more than seven years after the act or omission which gave rise to the cause of action." *Plummer* v. *Gillieson*, 44 Mass. App. Ct. 578, 580-581 (1998), citing Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, dated January 12, 1987 (1987 House Doc. No. 5262).

After considerable reflection, Massachusetts has achieved a balance between the conflicting policies presented by limitations periods for medical malpractice actions. While the discovery rule recognizes the unfairness in cutting off a person's right to file an action before he could have known of his harm, the legislative amendment, which imposes a limitation on the duration of liability for malpractice claims, takes into account the issue of affordable health care.

We examine the relative interests of Maine and Massachusetts in applying their policies in the present case. Maine has an interest in having its law apply, as it is where Dasha was injured. However, Maine's interest is significantly diminished now that MMC and its pathologist are no longer parties to the case.

Massachusetts, on the other hand, "has a significant interest in seeing that its resident plaintiff be compensated, and that its resident defendant . . . be held accountable for [his] conduct, which took place in Massachusetts, and which allegedly caused . . . [Dasha's] injury." *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. at 649. "[T]he fact that the . . . [residence of the plaintiff

---

c. 362. . . . [In addition], even with the adoption of a discovery rule, the plaintiff bears the burden of proving facts taking his case outside the impact of the three-year statute of limitations." *Ibid.*, and case cited. Lastly, the court was not persuaded that the medical malpractice discovery rule should be limited to claims based on the presence of a foreign object in the patient's body. *Id.* at 620. The court emphasized the "theoretical difficulty of justifying the applicability of the discovery rule to one kind of malpractice and not to another, as the principle underlying the discovery rule applies whether the malpractice consists of leaving a foreign object in the patient's body or of other negligence in diagnosis or treatment of the patient." *Ibid.*, and cases cited.

and defendant and the place of employment of the defendant] are grouped in a single state is an important factor to be considered in determining the state of the applicable law. The state where these contacts are grouped is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there." *Id.* at 649, quoting from Restatement (Second) of Conflict of Laws § 145 comment e, at 421. Massachusetts's relationship to the parties and the conduct causing Dasha's alleged injury make the interests at stake for Massachusetts greater than those of Maine. See *ibid.* Accordingly, Massachusetts has the dominant interest in having its policy enforced.

In conclusion, we find that Massachusetts has a more significant relationship to the remaining parties and the occurrence than does Maine. Therefore, the Massachusetts limitations period for medical malpractice actions applies to the claim against Dr. Adelman.

*Judgment reversed.*