Rockingham
No. 2001-106

DONALD HARRINGTON & a.

v.

BROOKS DRUGS, INC. & a.

Argued: March 6, 2002
Opinion Issued: July 23, 2002

*Kalil & LaCount*, of Rye (*Earl L. Kalil, Jr.* on the brief) and *Robert G. Eaton*, of Rye, by brief and orally, for the plaintiffs.

*Getman, Stacey, Tamposi, Schulthess & Steere, P.A.*, of Bedford (*Douglas N. Steere* on the brief and orally), for the defendants.

NADEAU, J. The plaintiffs, Robert E. Ricci, Jr. and Marie T. Ricci (in their capacities as assignees of the claims of Donald Harrington), and Linda Harrington, Ryan Harrington and Leigh Harrington, appeal decisions of the Superior Court (*McHugh*, J.) dismissing a negligence claim and loss of parental and spousal consortium claims, and dismissing Linda, Ryan and Leigh Harrington as named plaintiffs. We affirm in part and reverse in part.

The relevant facts follow. On the morning of November 8, 1997, plaintiff Donald Harrington (Harrington) was driving home from Brooks Pharmacy in Manchester, where he had just finished his regular overnight shift. He fell asleep, causing his automobile to cross into oncoming traffic where it struck Robert Ricci's automobile, injuring both men.

Ricci subsequently filed suit against Harrington, Brooks Drugs, Inc. and Maxi-Drug, Inc. The Brooks Pharmacy in question was owned by

Brooks Drugs, Inc. and Maxi-Drug, Inc. (collectively, Brooks Drugs). Prior to trial both cases were settled. As part of the settlement agreement with Harrington, Ricci obtained an assignment of any damage claim Harrington might have against Brooks Drugs. The instant action, therefore, is brought by Ricci and his wife, Marie, acting in their capacities as assignees of Harrington. Joining the Riccis are Linda Harrington, Donald's wife, who is asserting a loss of consortium claim, and the Harringtons' children, Ryan and Leigh Harrington, who assert claims for the loss of companionship and society of their father.

The superior court dismissed the parental consortium claims of Ryan and Leigh Harrington, finding no basis in New Hampshire law for such an action. To avoid "jury confusion," the superior court ordered that the caption of this case be amended so that the plaintiff be "identified solely as Donald Harrington." The court also held that a prior court determination that Harrington was injured outside the scope of his employment did not collaterally estop the defendants from now arguing the opposite. The court also dismissed Harrington's negligence claim, finding that because the "wrong doing alleged by Harrington ar[ose] out of and in the course of his employment," the Workers' Compensation Law barred that action. *See* RSA 281-A:8 (1999 & Supp. 2001). Finally, Linda Harrington's loss of consortium claim was dismissed as well.

On appeal, the plaintiffs argue that: 1) we should recognize a loss of parental consortium claim brought by a dependent child; 2) their negligence claims are not barred by the Workers' Compensation Law as Harrington's injuries did not arise out of and in the course of his employment; 3) a previous trial court ruling that Harrington was acting outside the scope of his employment at the time of the accident collaterally estops the defendants from claiming otherwise; and 4) the trial court erred when it removed Linda, Leigh and Ryan Harrington as named plaintiffs.

First, the plaintiffs argue that the interests of a dependent child in being protected from the loss of companionship of an injured parent is at least as important as a spousal claim and, therefore, worthy of recognition. Raising an issue of first impression for this court, the plaintiffs invite us to create a cause of action for a dependent child's loss of society of a parent injured as a result of negligent conduct. We decline the invitation.

In *Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719 (1984), we were asked to recognize a cause of action for the parental loss of society of a minor child who had been injured or killed. While not directly on point, the analysis utilized in *Siciliano* is useful in deciding the present question. Finding no support in the common law for the expansion of liability, we turned to public policy considerations, with reference to judicial and statutory precedent, to determine whether parents can recover for the loss

of society of their children. *See id.* at 725. The probability of increased litigation and multiple claims, which will hinder settlements and increase expenses, is as much a concern today as it was when *Siciliano* was decided. *See id.* In addition, we remain concerned that the "social burden of providing damages for this loss will ultimately be borne by the public through increased insurance premiums or in the enhanced danger that accrues from the greater number of people who will choose to go without insurance." *Id.* (quotations omitted).

Further, we can find no statutory support for a parental consortium claim where a parent has been injured. We take note that the legislature amended RSA 556:12, awarding damages to the minor children of decedents for their loss of familial relationship. *See* RSA 556:12, III (Supp. 2001). If the legislature intended to extend such a claim to the children of injured parents, we are hard pressed to imagine a more inviting opportunity to do so.

■ Finally, our decision is supported by the RESTATEMENT (SECOND) OF TORTS, which provides: "One who by reason of his tortious conduct is liable to a parent for illness or other bodily harm is not liable to a minor child for resulting loss of parental support and care." RESTATEMENT (SECOND) OF TORTS § 707A (1977). Consistent with the RESTATEMENT, "the overwhelming weight of authority in the nation is against recognition of a cause of action for loss of parental consortium." *Mendillo v. Bd. of Educ. of East Haddam*, 717 A.2d 1177, 1193 (Conn. 1998) (collecting cases from jurisdictions that have rejected parental consortium claims). For the foregoing reasons, we do not recognize a parental consortium claim.

Next, the plaintiffs contend that the trial court erred when it determined that Harrington's negligence claim was barred by provisions of the Workers' Compensation Law. *See* RSA 281-A:8. We agree and, therefore, need not reach the plaintiffs' collateral estoppel argument.

The standard of review in considering a motion to dismiss is "whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." *Hobin v. Coldwell Banker Residential Affiliates*, 144 N.H. 626, 628 (2000) (quotation omitted). "We assume the truth of the facts alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to him." *Id.* (quotation and brackets omitted). "If the facts pled do not constitute a basis for legal relief, we will uphold the granting of the motion to dismiss." *Id.* (quotation omitted).

In determining that Harrington's injuries arose out of and in the course of his employment, the trial court strictly confined its analysis to the issue as framed in the plaintiffs' writ. The trial court found:

A condition of his employment, namely the alleged unreasonably dangerous work schedule, is said to be the cause of the accident and the injuries suffered by Harrington. Thus, based solely upon the specific claims of Donald Harrington, the Court is compelled to rule that he must have his case adjudicated by the New Hampshire Department of Labor, pursuant to RSA 281-A.

In rendering its decision, the trial court focused on the fact that the plaintiffs' writ did not make a claim based upon the normal dangers of commuting to and from work, but rather "allege[d] that the defendant actively caused his fatigue from which the accident resulted by structuring his hours of employment" in a negligent manner. Accordingly, the trial court did not consider the matter under the rubric traditionally employed to determine whether RSA 281-A:8 bars a common law claim.

■ Regardless of the specific language utilized by the plaintiffs in their writ, accidental injury is compensable under the Workers' Compensation Law only if it arises "out of and in the course of employment." RSA 281-A:2, XI (1999 & Supp. 2001). To determine, therefore, whether a common law action is precluded by the exclusivity provisions of the Workers' Compensation Law, *see* RSA 281-A:8, the following test is applied. To prove that Harrington's claim is compensable under the Workers' Compensation Law, the defendant must prove:

(1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment; and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee.

*Cook v. Wickson Trucking Co.*, 135 N.H. 150, 154 (1991) (quotations and citations omitted). The test contains three elements. Failure to prove any one of the elements is fatal to a claimant's workers' compensation claim. *See Anheuser-Busch v. Pelletier*, 138 N.H. 456, 458 (1994).

The first element, that Harrington's injury arose out of employment, is primarily concerned with causal connection. *See Whittemore v. Sullivan Cty. Homemaker's Aid Serv.*, 129 N.H. 432, 434 (1987). The plaintiffs have conceded the existence of the first element.

■The second element is whether Harrington's injury occurred within the boundaries of time and space created by the terms of employment. *See Cook*, 135 N.H. at 154. We have repeatedly recognized that the ordinary perils of travel between home and work are not considered hazards of employment and, therefore, that injuries arising from such travel are noncompensable under our Workers' Compensation Law. *See Donnelly v. Kearsarge Tel. Co.*, 121 N.H. 237, 240 (1981). Overruling the "going and coming" rule "would open a veritable Pandora's box that would inevitably lead to the 'portal-to-portal' type rule of compensation. That is a journey upon which we are not prepared to embark." *Id.* at 242 (quotations and ellipses omitted). An exception is made, however, when a peril that arises out of the employment overtakes the employee when he is returning home after employment beyond the usual working hours, as the result of special duties which thus subject him to special travel risks. *See Heinz v. Concord Union School Dist.*, 117 N.H. 214, 218 (1977). A second exception exists for personal activities that are "reasonably to be expected" and "not forbidden," or that confer a "mutual benefit on the employee and employer." *Cook*, 135 N.H. at 154 (quotations omitted).

■The trial court found that Harrington was not on a special errand or duty when the accident occurred. We agree. While Harrington had finished an overnight shift prior to the accident, those overnight hours were his regular work schedule. To find that Harrington's commute home after an overnight shift constituted a special errand or duty would impose upon employers of overnight or late shift employees liability greater than that borne by employers whose employees work a more traditional nine-to-five schedule. That we are not prepared to do.

Nor was Harrington engaged in personal activities reasonably expected and not forbidden by his employer. We have applied this exception where the injured employee was engaged in activities on the employer's premises, utilizing the employer's equipment, with the employer's knowledge. *See, e.g., Maheux v. Cove-Craft Co.*, 103 N.H. 71, 74 (1960); *Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 237-38 (1966). Those facts are not present here. Finally, an employee's commute is a requirement for most jobs and, therefore, cannot realistically be deemed of mutual benefit to both employee and employer. To find otherwise would allow the exception to swallow the rule. For the foregoing reasons, we hold that Harrington's negligence claim is not barred by the exclusivity provisions of RSA 281-A:8 and reverse, in pertinent part, the trial court's order of dismissal.

■Finally, because we have decided that New Hampshire common law does not recognize parental consortium claims, we need not address the

plaintiffs' claim that the trial court improperly removed Leigh and Ryan Harrington as named parties. Linda Harrington, however, asserts a traditional spousal consortium claim against the defendants. RSA 281-A:8 provides that:

> The spouse of an employee entitled to benefits under this chapter . . . shall have no direct action, either at common law or by statute or otherwise, to recover for such damages against any person identified in subparagraph I(a) or (b).

RSA 281-A:8, II. Because the trial court held that Harrington was barred from making a common law claim by the Workers' Compensation Law, Linda Harrington's contingent consortium claim was dismissed as well. *See O'Keefe v. Associated Grocers*, 117 N.H. 132, 136 (1977). Because we reverse the dismissal of Harrington's negligence claim, we also reverse the dismissal of Linda Harrington's claim.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.