Haggerty, J.
The plaintiff, William Lupoli (“Lupoli”), and his children (“the Lupoli children”) commenced this action against the defendants C.H. Baab (“Baab”), Honeywell Corp. (“Honeywell”) and Northern Utilities Natural Gas, Inc. (“Northern”) for an incident that occurred at the plaintiffs place of employment in New Hampshire. As a result of the incident Lupoli was severely burned.
Northern has filed two motions and Baab and Honeywell join in the first motion. The first motion requests this court to determine the applicable state law. This motion is ALLOWED, and the substantive law of New Hampshire applies to this case. The second motion is one for partial summary judgment.
For the reasons set forth below, Northern’s motion for partial summary judgment is ALLOWED.[3]

BACKGROUND

This action arises out of an incident that occurred at Sal’s Just Pizza in Salem, New Hampshire. Lupoli worked as a pizza maker at this New Hampshire restaurant. On the morning of July 1, 1997, Lupoli attempted to turn on the pizza oven when he noticed the pilot light was off. Lupoli then attempted to re-start the pilot light. When the igniter failed to light the pilot, Lupoli proceeded to light the oven manually. Gas accumulated in the oven and caused an explosion which severely burned Lupoli. Thereafter, Lupoli and the Lupoli children brought this lawsuit against Northern (the gas supplier), Baab (the oven manufacturer and Honeywell (the valve manufacturer).

DISCUSSION

I. Determination of Applicable State Law
Ordinarily, the substantive law governing an action of tort for physical injuiy is that of the place where the injuiy occurred. Cosme v. Whitman Mach. Works, Inc., 417 Mass. 643, 645 (1994); see Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 333 (1983). However, on the particular facts of a case, another jurisdiction may well be “more concerned and more involved with certain issues.” Cohen, 389 Mass, at 333 (citations omitted).
The Massachusetts appellate courts have turned to The Restatement (Second) of Conflict of Laws (1971) (“the Restatement”) for guidance in examining conflict of law issues in tort cases. The general policy considerations which guide the court in selecting the appropriate choice of law are as follows, “(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainly, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.” The Restatement (Second) of Conflict of Laws §6 (1971). Section 145 of the Restatement provides that in matters of tort, generally, the rights and liabilities of the parties are determined by the state which has the most significant relationship to the event and to the parties. In evaluating the contacts within Massachusetts and New Hampshire, the court may consider: (1) where the injury and conduct occurred; (2) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (3) the place where the relationship is centered. The Restatement (Second) of Conflict of Laws §145(1) and (2) (1971). Finally Section 146 of the Restatement provides that in matters of personal injury, the law of the state where the injuiy occurred applies unless another state has a more significant relationship to the occurrence under the policies enumerated in Section 6 of the Restatement. The Restatement (Second) Conflict of Laws, §146 (1971).
The court then evaluates the contacts, and the general interests of the parties in the context of the considerations set out in the relevant sections of the Restatement. Bushkin Ass’n, Inc. v. Raytheon Co., 393 Mass. 622 at 631 (1985). It is not necessary to evaluate all of the considerations, only those that are relevant. Cosme, 417 Mass, at 647. This method may result in inconsistent case law; however, Massachusetts courts have decided that it is the best approach to the difficult choice of law questions. Bushkin, 393 Mass, at 631.
In this case, the contacts are as follows. Lupoli was injured at Sal’s Just Pizza in Salem, New Hampshire. At the time of the incident Lupoli lived and worked in New Hampshire. All of Lupoli’s children resided in New Hampshire at the time of the injury. Lupoli received workers’ compensation benefits pursuant to New Hampshire law. Lupoli was a resident of New Hampshire when he filed the lawsuit. Northern is a New Hampshire public utility company, organized under the laws of New Hampshire. Northern has an office in Massachusetts, but provides no gas to Massachusetts residents. Baab is a Massachusetts corporation, doing business in New Hampshire. The oven was manufactured in Massachusetts. Honeywell does business worldwide, including in Massachusetts and in New Hampshire.
A. Relevant Policies and Interest
In determining the applicable rule of law this Court considers the underlying policies of the plaintiffs’ claims in both New Hampshire and Massachusetts. The purpose of the analysis is to determine the relevant policies and interests of Massachusetts and New Hampshire in conjunction with this particular case. Bushkin, 393 Mass, at 631.
1. Loss of Consortium
In Ferriter v. Daniel O’Connell’s Sons, Inc., 381 Mass. 507 (1980), the Supreme Judicial Court announced that a child has standing to claim loss of parental consortium. The Court concluded that it was *710 entirely appropriate to protect a child’s reasonable expectation of parental society when a parent is harmed due to the negligence of a third party. Id. at 515-16. The defendant in Ferriter argued that a child’s interest in this context is less intense than that of a spouse but the Court rejected that argument. Id. at 510. The Court made clear that those minors who are actually dependent upon their parents may have a loss of consortium claim. Id. at 516. The dependence must not be merely economical; the child must also prove that he is dependent on the parent for closeness and guidance. Id.
New Hampshire does not recognize a cause of action for loss of parental consortium. In Harrington v. Brooks Drugs, Inc., 808 A.2d 532, 535 (N.H. 2002), the Court expressly declined to create a cause of action for a dependent child’s loss of society as a result of negligent conduct of a third party.[4] The Court’s decision rested upon the fact that no statutory or common law supported the creation of such a cause of action. Id. at 534. The Court also opined that such a cause of action would increase litigation, multiply claims, and that the public as a whole would suffer from increased insurance rates. Id. Therefore, the court concluded that the public policy goals outweighed the need for this cause of action.[5] See id.
Massachusetts has strong policy reasons for permitting loss of parental consortium claims. However, the policy is not viewed in a vacuum. The plaintiffs’ argument is hindered by the fact that the Lupoli children resided in New Hampshire when the injury occurred and moved to Massachusetts after the law suit was filed. The cases that discuss loss of consortium in the context of conflict of law issues do not discuss a residency requirement. See Cohen, 389 Mass. 327; Nierman v. Hyatt Corp, 59 Mass.App.Ct. 844 (2003); Dasha v. Adelman, 45 Mass.App.Ct. 418 (1998). In fact, this Court is not aware of a Massachusetts case which requires that a child be a resident of the Commonwealth when the injury occurs. Nevertheless, when Massachusetts law has been applied, there are common threads among the loss of consortium cases: The injury occurred in Massachusetts, the plaintiff was a resident of Massachusetts, or both factors were present. See Cohen, 389 Mass. 327; Nierman, 59 Mass.App.Ct. 844; and Dasha, 45 Mass.App.Ct. 418 (1998).
The Supreme Judicial Court has held that the place where the last event necessary to make the actor liable is the place of the injury for choice of law considerations. Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 333 (1983). Nellie Cohen was a resident of Massachusetts who died in Massachusetts. Id. at 329. Ms. Cohen died two days after she learned in a phone call from her son that another son had died in a plane crash. Id. The court held that her learning of the event was the last event necessary to make the actor liable, even though her son’s plane crashed somewhere between Chicago and Los Angeles. Id. at 334. Therefore, the court concluded that for choice of law purposes, the injury to Ms. Cohen had occurred in Massachusetts. Id. The court contrasted the Cohen facts with those of another case (McVickers v. Chesapeake & Ohio. Ry., 194 F.Sup. 842, 849 (E.D.Mich. 1961)) in which a woman who had lost her husband claimed that although the injury occurred in one state, the loss of consortium occurred in the state of their marital domicile. Id. The court noted that in McVickers, the plaintiff did not appreciate the difference between injury and damage. Id. The injury in McVickers was the husband’s death in one state, and the damage was the plaintiffs loss of society and comfort in anoüier state. The last event necessary for liability in that case was her husband’s death. The last event necessary in this case took place in New Hampshire, when Lupoli was injured. The Lupoli children were residing in New Hampshire at the time of Lupoli’s injury. Therefore, New Hampshire became the situs of their injury, even though their damage is continuing in Massachusetts.
In a later decision, the Appeals Court held that Massachusetts law applied, although the plaintiff was a Maine resident at the time of the initial injury. Dasha v. Adelman, 45 Mass.App.Ct. at 426. However, the defendant’s conduct occurred in Massachusetts, and the plaintiff was treated in Massachusetts; therefore both the injury and the conduct occurred here. Id. at 418-20. In this case, the alleged conduct took place in several different locations. The valve was made in Mexico, and delivered to Massachusetts. The gas was supplied in New Hampshire. The oven was manufactured in Massachusetts. Thus, the conduct occurred in both New Hampshire and Massachusetts and the injury occurred in New Hampshire.
Massachusetts has an interest in providing an opportunity for its resident plaintiffs to seek compensation for personal injuries. Nierman v. Hyatt Corp., 59 Mass.App.Ct. at 848-49. In Nierman, the plaintiffs, a husband and wife, were vacationing in Texas when the wife was injured while in transport around the Hyatt hotel. Id. at 846. The plaintiffs filed suit in Massachusetts and sought damages for the wife’s injury and the husband’s loss of consortium. Id. The Nierman Court emphasized that the plaintiffs were Massachusetts residents, and had booked their travels through a Massachusetts travel agent. Id. at 848-49. The Court stressed the fact that applying Massachusetts law would not harm Hyatt nor offend Texas. Id. Specifically, the Court stated that the Hyatt Corporation does substantial business in Massachusetts and is not principally based in Texas. Id. Therefore, the Court would not be denying Hyatt any protection that Texas would normally afford a local defendant. Id. Contrast this case. Northern has an office in Massachusetts, but does all of its business in New Hampshire. Northern would be harmed by the application of Massachusetts law. Although Massachusetts has compelling policy reasons for recogniz *711 ing loss of parental consortium, this Court concludes that New Hampshire has a more significant relationship to the case at bar. See Cohen, 389 Mass, at 334-35; Nierman, 59 Mass.App.Ct. at 848-49; and Dasha, 45 Mass.App.Ct. at 426.
The Lupoli children argue that their injuiy continues in Massachusetts, and that therefore they have a distinct claim for loss of consortium arising in the Commonwealth. However, the children’s argument is not persuasive because of the substantial contacts and interests in New Hampshire and because the children did not even reside in Massachusetts at the time of the filing of this lawsuit, much less at the time of injuiy to their father. Thus, the substantive law of New Hampshire applies to the loss of consortium claims.
2. Tariff
Northern Utilities operates under a tariff filed with the New Hampshire Public Utilities Commission. The tariff is a statement by Northern of the services it will furnish, the conditions under which such services will be furnished, and the price at which they will be furnished. A consumer is bound by the tariff regardless of his knowledge or assent and the tariff contains a limitation on liability. Northern argues that the tariff bars the plaintiff from recoveiy under any theory of liability other than negligence. The plaintiff contends that the tariff precludes only recoveiy for injuiy caused by an act of God, or during a power outage, and therefore, the tariff does not apply to this situation.[6]
Tariffs are prevalent throughout the country. They enable utility companies to control their liability and thus, keep their prices low and fair. This not only protects the public, but also the financial integrity of the public utility. Generally, courts have upheld the limited liability that tariffs provide for these policy reasons.
In New Hampshire and Massachusetts, the courts have consistently upheld tariffs. See Guglielmo v. Worldcom, Inc., 808 A.2d 65, 69 (N.H. 2002) (rights and liabilities under the tariff cannot be varied or enlarged by contractor tort); Disk N’ Data v. AT&T, 415 Mass 286, 888 (1993) (tariffs are appropriate for telegraph and electric companies). Massachusetts and New Hampshire generally follow the same law with regard to the tariff. However, no case in Massachusetts has yet to deal with a tariff for a gas company. The plaintiff contends that there is no reason to believe that Massachusetts would extend this policy to gas companies merely because they have upheld telegraph and electric companies. For purposes of determining the applicable rule of law, this court need only be concerned with the states’ policies and interests. The policies of New Hampshire and Massachusetts regarding tariffs are similar, as are their interests in seeing the tariff enforced. However, the injuiy in this case occurred in New Hampshire and the tariff is filed with the New Hampshire Public Utilities Commission. Therefore, the substantive law of New Hampshire applies. New Hampshire has a significant interest in interpreting a tariff which its state commission agreed to enforce.
II. Summary Judgment Standard
Summary judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue; and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 404 Mass. 805, 809 (1991). The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eisner, 405 Mass. 207, 209 (1989).
A. Loss of Consortium
New Hampshire has not adopted a cause of action for parental loss of consortium. Lupoli argues that even if New Hampshire law is applied, their loss of consortium claim should survive because the Supreme Court of New Hampshire has not stated that a loss of consortium claim cannot arise out of a strict liability suit. This court concludes that the policy reasons set forth in Harrington preclude all claims of loss of parental consortium whether they sound in strict liability or negligence. Harrington v. Brooks Drugs, Inc., 808 A.2d at 534. The New Hampshire Supreme Court’s reasoning in Harrington was to preserve judicial efficiency and to protect the public from increased insurance rates. These policy concerns are not specific to a negligence claim; they apply to all claims. Therefore, this Court holds that because New Hampshire does not recognize a cause of action for loss of parental consortium, summary judgment for the defendants is appropriate on all Counts for lost of consortium.[7]
B. Tariff
Northern Utilities filed a tariff with the New Hampshire Public Utilities Commission. A tariff is a statement by Northern of the services it will furnish, the conditions under which such services will be furnished, and the price at which they will be furnished. “The rights and liabilities as defined by the tariff cannot be varied or enlarged by either contract or tort. . .” Guglielmo v. Worldcom Inc., 808 A.2d 65, 69 (N.H. 2002), quoting American Telephone & *712 Telegraph Co. v. Central Office Telephone, Inc., 524 U.S. 214, 227 (1998).
The relevant provision of the tariff is as follows:
Neither Company nor Customer shall be liable in damage to the other for any act, omission or circumstances occasioned by or in consequence of any acts of God, strikes, lockouts, acts of the public enemy, wars, blockades, insurrections, riots, epidemics, landslides, lightning, earthquakes, fires, storms, floods, unforeseeable or unusual weather conditions, washouts, arrests and restraint of rulers and peoples, civil disturbances, explosions, breakage, or accident to machinery lines of pipe, line freeze-ups, temporary failure of gas supply, the binding order of any court or governmental authority which has been resisted in good faith by all reasonable legal means, and any other cause except willful default or neglect whether of the kind enumerated, or otherwise . . .
Northern properly asserts that the tariff precludes all liability on its behalf, except for negligence or willful default. The tariff protects against liability “for any other cause except wilful default or neglect.” This language makes clear that the limit of liability is not restricted to the causes previously enumerated in the tariff, as argued by Lupoli. The court agrees that the tariff necessarily precludes a claim for strict liability and breach of warranty.
C. Strict Liability[8]
Northern contends that under New Hampshire law, it cannot be held strictly liable for the incident at Sal’s Pizza. The doctrine of strict liability has generally met with disfavor in New Hampshire. Bagley v. Controlled Environmental Corp., 503 A.2d 823, 825 (N.H 1986). The cases in which strict liability has been imposed are those cases in which the Legislature or the common law has provided for it and liability is impossible to prove in otherwise meritorious claims. Id. at 825.
Lupoli contends that natural gas is a product so “inherently dangerous” strict liability should be imposed. In Bagley, the Court held that the mere fact that an activity is unreasonably dangerous is not sufficient to warrant the imposition of strict liability. Id. at 825-26. In that case, the defendant had released chemicals onto neighboring land. Id. at 824. The court noted its discontent with the imposition of strict liability and concluded that there were other means to find fault. Id. at 826. There are no appellate decisions in New Hampshire which impose strict liability on gas companies for gas leaks, nor is there a statute which does so. Moreover, Lupoli has a claim for negligence, i.e., a way to prove liability.
Electric companies have not been held strictly liable for personal injuries. See Vincent v. Public Service Co. of New Hampshire, 529 A.2d 397 (N.H. 1987); Wood v. Pub. Serv. Co. of New Hampshire, 317 A.2d 576 (N.H. 1974). Northern argues that electricity and gas are similar. In Wood v. Public Service Company, the court addressed the question of the imposition of strict liability on electric companies. Wood, 317 A.2d 579-80. The Court concluded that electricity is dangerous and that consumers are expected to exercise due care when using electricity. Vincent, 529 A.2d at 398. Finally, the court noted that the imposition of strict liability is met with disfavor in New Hampshire and it saw no compelling policy reason to extend strict liability to electric companies. Wood, 317 A.2d 579-80.
This court concludes that the New Hampshire Supreme Court is not inclined to expand the doctrine of strict liability to include gas companies. The facts of Wood and Vincent are similar to the case at bar. The facts are everyday incidents gone awry. In Wood, the plaintiff was painting his house and the ladder slipped on the electric line. 317 A.2d 577. In Vincent, the plaintiff left boxes on his stove when the electricity was turned on by the electric company. 529 A.2d at 397-98. In this case, Lupoli lit a stove when the gas was leaking. This Court disagrees with Lupoli’s argument that New Hampshire provides for strict liability in these circumstances. Accordingly, the defendants are entitled to summary judgment on the strict liability claims.

ORDER

For the foregoing reasons, it is hereby ORDERED that summary judgment is ALLOWED as to Counts IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII (loss of consortium claims), XIX, XX, XXI (breach of warranty claims), and XXII, XXIII, XXIV (strict liability claims).

Although neither Baab nor Honeywell filed written motions for partial summary judgment, the loss of consortium, strict liability and breach of warranty claims against them necessarily fail for the reasons which follow.

The plaintiff argues that if New Hampshire law applies, their loss of consortium claim will be based on strict liability and not negligence, an issue which the Supreme Court of New Hampshire has not yet decided.

The court noted in Goebel that merely because two state policies come to opposite conclusions does not end the analysis. In fact the court noted that in this instance evaluating states’ respective interests in relation to the particular issues becomes even more important. Goebel 871 F.Sup. at 76.

For example, if the power went out and a person tripped and broke his arm during the outage the tariff would preclude a suit in the absence of “wilful default or neglect.”

Although Baab and Honeywell did not separately file a written motion for summary judgment the loss of consortium claims against them necessarily fail because New Hampshire does not recognize a claim for loss of parental consortium.

Although the tariff precludes all claims except those asserting negligence, the court separately addresses the strict liability claims.