**Randall ASHLEY, Plaintiff**

v.

**NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, Berkshire Medical Center, Inc, and Dr. Steven Silver, Defendants.**

**Civil Action No. 13–30197–KPN.**

United States District Court, D. Massachusetts.

Signed June 24, 2014.

Randall Ashley, Upstate Correctional Facility, Malne, NY, pro se.

Dennis M. LaRochelle, Cain, Hibbard, & Myers, PC, Pittsfield, MA, for Berkshire Medical Center, Inc.

John G. Bagley, Jeffrey K. O'Connor, Morrison Mahoney LLP, Springfield, MA, for Dr. Steven Silver.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANTS' MOTIONS TO DISMISS (Document Nos. 18 and 26)*

NEIMAN, United States Magistrate Judge.

Proceeding *pro se*, Randall Ashley ("Plaintiff"), an inmate at the Bane Hill Correctional Facility in Malone, New York, commenced this medical malpractice action in the United States District Court for the Southern District of New York against Berkshire Medical Center ("BMC"), Dr. Steven Silver, and the New York State Office of Children and Family Services ("Children and Family Services"). The claims arise out of a medical procedure performed in 1994. District Judge Loretta A. Preska dismissed the claims against Children and Family Services under 28 U.S.C. § 1915A(a) on Eleventh Amendment state sovereign immunity grounds and transferred the remaining claims against BMC and Dr. Silver to this court pursuant to 28 U.S.C. § 1406(a).

BMC and Dr. Silver (together, "Defendants") have since filed motions to dismiss.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the following reasons, the court will grant Defendants' motions.

## I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992). Moreover, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what that ... claim is and the grounds upon which it rests.'" *Sepulveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 28 (1st Cir.2010). Recently, the Supreme Court made clear that, under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint that states a plausible claim for relief, on its face, will a survive a motion to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Still, a *pro se* plaintiff is "entitled to liberal construction of his allegations, no matter how inartfully

pled." *Stern v. Haddad Dealerships of The Berkshires, Inc.,* 477 F.Supp.2d 318, 321 (D.Mass.2007).

## II. BACKGROUND

The following facts come directly from Plaintiff's complaint and are stated in a light most favorable to him. *Young v. Lepone,* 305 F.3d 1, 8 (1st Cir.2002). In 1994, Plaintiff, who was thirteen years-old, was in the custody of Children and Family Services, which sent him to BMC in Pittsfield, Massachusetts, "to have me[t]al pins" surgically inserted in his body. Dr. Silver, a Massachusetts resident, performed the operation, during which Plaintiff awoke but was put back to sleep. Plaintiff alleges that Dr. Silver, at some point, should have removed the pins, which remain in his left leg and cause severe pain. In fact, Plaintiff alleges, he has been in severe pain "for the past 19 years" as result of the pins. Plaintiff's mother, Terry Ashley, "knew of all the medical procedures that were ... administered and conducted" by BMC staff and Dr. Silver. In addition, Children and Family Services knew that the pins were to be removed but never sent Plaintiff to have the problem corrected. Plaintiff "tried several different attempts to contact them over the years, but they simply ignore[d]" him. On September 12, 2013, Plaintiff filed the instant complaint, which seeks as relief $10,000,000 for pain and suffering.

## III. DISCUSSION

Defendants primarily argue that Plaintiff's complaint is untimely and, therefore, should be dismissed. Unfortunately for Plaintiff's quest, the court agrees.[1]

---

1. Dr. Silver also argues that dismissal is warranted because Plaintiff cannot satisfy the $75,0000 amount-in-controversy requirement of 28 U.S.C. § 1332 and because he failed to provide advance written notice of his claim as required by M.G.L. c. 231, § 60L. As to the

amount-in-controversy requirement, the $10,000,000 figure may indeed be exaggerated; the court, however, cannot conclude that "it appears to *a legal certainty* that the claim is really for less than the jurisdictional amount," *Esquilin–Mendoza v. Don King Pro-*

■ Because this diversity action was transferred to this venue under 28 U.S.C. § 1406(a), the court must apply Massachusetts choice of law rules as they affect the timeliness of Plaintiff's complaint. *See Heinrich ex rel. Heinrich v. Sweet,* 49 F.Supp.2d 27, 34 (D.Mass.1999) ("When a case is transferred pursuant to section 1406(a), the choice of law rules of the transferee forum apply, rather than the transferor forum."); *Gerena v. Korb,* 617 F.3d 197, 204 (2d Cir.2010) ("If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, ... it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."). Massachusetts choice of law rules, in turn, direct the court to apply Massachusetts substantive law since both defendants reside in Massachusetts and the alleged tort occurred here as well. *See Dasha v. Adelman,* 45 Mass.App.Ct. 418, 699 N.E.2d 20, 23–26 (1998) (discussing Massachusetts choice of law rules).

Under Massachusetts law, "any claim by a minor against a health care provider stemming from professional services or health care rendered, whether in contract or tort, based on an alleged act, omission or neglect shall be commenced within three years from the date the cause of action accrues, except that a minor under the age of six years shall have until his ninth birthday in which the action may be commenced." MASS. GEN. LAW. ch. 231, § 60D; *see also* MASS. GEN. LAW. ch. 260, § 4 (three year medical malpractice statute of limitations for non-minors).

■■ Historically, it should be noted, claims by minors were tolled by M.G.L. c. 260, § 7, such that they did not accrue until the individual reached eighteen years of age. In 1976, however, the Massachusetts Legislature, by enacting M.G.L. c. 231, § 60D, excluded medical malpractice claims of minors from the general tolling provision of M.G.L. c. 260, § 7. *See Harlfinger v. Martin,* 435 Mass. 38, 754 N.E.2d 63, 68 (2001); *Cioffi v. Guenther,* 374 Mass. 1, 370 N.E.2d 1003, 1005 (1977). Accordingly, because Plaintiff was thirteen years-old at the time of the surgery, and not six years old or younger, the same three-year limitations period provided by both M.G.L. c. 231, § 60D and M.G.L. c. 260, § 4 applies. Still, pursuant to the "discovery rule" adopted by the Massachusetts Supreme Judicial Court ("SJC"), "[a] cause of action for medical malpractice does not accrue until a patient learns, or reasonably should have learned, that he has been harmed as a result of a defendant's conduct." *Harlfinger v. Martin,* 435 Mass. 38, 754 N.E.2d 63, 67 n. 3 (2001); *Franklin v. Albert,* 381 Mass. 611, 411 N.E.2d 458, 459–60 (1980).

It is clear based on the facts alleged in his complaint that Plaintiff knew or reasonably should have known that he was

ductions, Inc., 638 F.3d 1, 4 (1st Cir.2011) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)), especially considering Plaintiff's allegation that he has been in pain for nineteen years. As to the written notice requirement, it is unclear whether Plaintiff must allege compliance with M.G.L. c. 231, § 60L in his complaint. *See, e.g., Sovereign Bank v. Sturgis,* 863 F.Supp.2d 75, 81 (D.Mass.2012) (explaining that, under Massachusetts law, "for many conditions precedent, there is no obligation to allege compli-

ance.... However, sometimes a condition precedent is considered a 'special element,' compliance with which must be alleged in the pleading."). The statute was only passed in 2012, and the court cannot find any Massachusetts cases resolving this issue. Accordingly, in light of the other grounds for dismissal, the court will refrain from making such a determination. *See Gill v. Gulfstream Park Racing Ass'n, Inc.,* 399 F.3d 391, 402 (1st Cir.2005) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law.").

harmed as a result of Defendants' conduct well before September of 2010 when he commenced the instant lawsuit and, therefore, his claims are barred by the statute of limitations. *See Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 557 N.E.2d 739, 741 (1990) ("The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury."). Plaintiff specifically alleges that he has "been in severe pain for the past 19 years, as a result of the wrongful medical practices of Dr. Steven Silver." He also alleges that he "tried several different attempts to contact [Children and Family Services] *over the years*, but they simply ignore[d]" him and that his mother was aware of the specifics of the procedure at that time.

To be sure, Plaintiff asserts in his response that, at the time, he was "clueless that a malpractice occured [sic] at the hands of Dr. Silver and BMC." He also asserts that he only recently obtained a copy of his BMC medical records, which state that the pins were meant to be removed after one year. Generally, however, the court may only consider at the motion to dismiss stage the facts alleged in the complaint, and not additional assertions alleged in a response. *See, e.g., Guckenberger v. Boston University*, 957 F.Supp. 306, 311 n. 5 (D.Mass.1997); *see also Frost v. F & R Realty Trust*, 80 Mass.App.Ct. 1108, 2011 WL 4563022, at *1 (Mass.App.Ct. Oct. 4, 2011) (unpublished). Yet, even were the court to consider these additional assertions, Plaintiff's claims remain untimely. Read together with the facts alleged in the complaint, the additional assertions indicate that, while

Plaintiff was not definitively aware at the time of the surgery that Defendants harmed him and only recently discovered that the pins were supposed to be removed after one year, he still was in pain for nineteen years commencing after the surgery. In light of this prolonged period of time, Plaintiff, as a matter of law, reasonably should have known that he was harmed by Defendants' conduct prior to September of 2010, even without the additional knowledge that the pins were meant to be removed after one year. *See Bowen*, 557 N.E.2d at 743 ("Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations.").

■ Even if the court could somehow infer that the discovery rule saves Plaintiff's claims for purposes of the statute of limitations, *e.g.*, that he reasonably could not have learned that Defendants' conduct harmed him until after September of 2010, *i.e.*, three years prior to the commencement of this suit, the seven-year statute of repose would nonetheless bar his claims. As set forth in language added to Mass. Gen. Law. ch. 231, § 60D in 1986, which language immediately follows the medical malpractice statute of limitations provision, "in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based." [2] This language was apparently added to the statute in response to the SJC's adoption of the discovery rule. *See Harlfinger*, 754 N.E.2d at 68. As the SJC explained,

[a] statute of limitations normally governs the time within which legal pro-

---

2. The same statute of repose language was added to M.G.L. c. 260, § 4 in 1986. *Harl-* *finger*, 754 N.E.2d at 67 n. 4.

ceedings must be commenced after the cause of action accrues.... A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered. *Id.* at 67 (quoting *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 516 (1982); *see also Joslyn v. Chang,* 445 Mass. 344, 837 N.E.2d 1107, 1110 (2005) ("The effect of a statute of repose is to place an absolute time limit on the liability of those within its protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired.") (quoting *McGuinness v. Cotter,* 412 Mass. 617, 591 N.E.2d 659, 662 (1992)); *CTS Corp. v. Waldburger,* — U.S. —, 134 S.Ct. 2175, 2183, 189 L.Ed.2d 62 (2014) ("The repose provision is therefore equivalent to 'a cutoff,' ... in essence an 'absolute ... bar' on a defendant's temporal liability.") (citations omitted)). Thus, regardless of when Plaintiff's claims accrued for statute of limitations purposes, his claims are absolutely barred by the statute of repose for failure to bring the action within seven years "of the act or omission which is the alleged cause of the injury"— in this case 2001 or, perhaps, 2002 (considering the non-removal of the pins one year after surgery).

■ To be sure, the statutory language added in 1986 also had an exception to the statute of repose, namely, "where the action is based upon the leaving of a foreign object in the body." MASS. GEN. LAW. ch. 231, § 60D. But the instant matter, the court finds, does not fall within this "foreign object" exception. As Plaintiff alleges, he was sent to BMC for the purpose of having the metal pins surgically inserted into his body. Accordingly, because the pins were intentionally placed into his

body for a specific medical purpose, they cannot be said to be "foreign objects" within in the language of the statute. *See* Black's Law Dictionary 720 (9th ed.2009) (defining "foreign object" as "[a]n item that appears where it does not belong; esp., an item introduced into a living body, such as a sponge that is left is a patient's body during surgery.").

The SJC's discussion of "foreign objects" in *Harlfinger* supports this interpretation:

> Problems of proof, and changes in the standard of care, do not plague foreign object cases, no matter how long ago the alleged malpractice occurred. The later discovery of the foreign object is, for all practical purposes, proof of some earlier negligence on the part of a health care provider. The Legislature could rationally decide that the risks of stale claims involving that specific type of medical malpractice were so low that they could, as a group, safely be exempted from the seven-year statute of repose. By comparison, the passage of time makes other types of malpractice claims difficult to defend ..., such that an absolute deadline measured from the actual date of the act of malpractice may be viewed as appropriate.

*Id.* at 72. As this discussion makes clear, albeit in a different context, the foreign object exception contemplates a later discovery of an unintentionally left item. Here, by contrast, Plaintiff did not discover an unintentionally left "foreign object" in his body sometime later but, rather, knew of the pins at the time of the surgery and thereafter. As such, Plaintiff simply does not fit within the protection of the "foreign object" exception. That being so, "[t]here comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not be

called on to resist a claim when evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* at 69 n. 8 (quoting *Klein,* 437 N.E.2d at 514).

### IV. CONCLUSION

For the reasons stated, Defendants' motions to dismiss are ALLOWED.

SO ORDERED.